**Opinion issued July 14, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00453-CV

————————————

**THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,**
**Appellant**

**V.**

**KEVIN ROBERTS AND EXXON MOBIL CORPORATION, Appellees**

---

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-03033**

---

## O P I N I O N

In this appeal, we consider whether the trial court erred in granting summary

judgment declaring that a subcontractor's workers' compensation carrier had

waived its rights of subrogation entitling it to recoup payments made on behalf of its insured.  We reverse and remand.

## BACKGROUND

*Exxon Hires Savage—The Relevant Contract Provisions*

In June 2007, Exxon Mobil ["Exxon"] hired Savage Refinery Services ["Savage"] to perform some work at its refinery in Baytown, Texas.  The contract provided that Savage would obtain certain insurance coverages and obtain certain waivers of its insurers' subrogation rights against Exxon.  Specifically, paragraph 14(a) of the contract between Exxon and Savage provided as follows:

> 14. **Insurance.**
> (a) **Coverages**. [Savage] shall carry and maintain in force at least the following insurances and amounts: (1) for all its employees engaged in performing Services, workers' compensation and employers' liability insurance or similar social insurance in accordance with applicable law which may be applicable to those employees; . . . [Savage] and its insurer(s) providing coverage in this Section shall waive all rights of subrogation and/or contribution against [Exxon] and its Affiliates to the extent liabilities are assumed by [Savage], except [Savage] expressly agrees not to cause itself or its insurer(s) to waive any right of subrogation and/or contribution against [Exxon] and its Affiliates under any workers' compensation and employers' liability insurance, or similar social insurance in accordance with law which may be applicable to those employees of [Savage], when [Exxon] elects to furnish or arrange same.

In accordance with its obligation under paragraph 14(a), Savage obtained workers' compensation insurance from The Insurance Company of the State of Pennsylvania ["ICSP"], which contained the following endorsement, providing in relevant part:

2

**Texas Waiver of Our Right to Recover From Others Endorsement**

We [ICSP] have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where [Savage is] required by a written contract to obtain this waiver from us.

Schedule

(x) Blanket Waiver.

Any person or organization for whom [Savage] has agreed by written contract to furnish this waiver.

The contract between Exxon and Savage also contained an indemnity provision whereby each promised to indemnify the other for personal injury claims brought by third parties (including each other's employees), arising out of their own negligence. In other words, Savage would indemnify Exxon for personal injury claims that were attributable to Savage's own negligence. The specific language of the indemnity provision provides in relevant part as follows:

> **12. Third Party Indemnity**. [Exxon] and [Savage] shall indemnify, defend, and hold each other harmless from all claims, demands, and causes of actions asserted against the indemnitee by any third party (including, without limitation [Exxon's] and [Savage's] employees) for personal injury, death, or loss of or damage to property resulting from the indemnitor's negligence, Gross Negligence, or Willful Misconduct.

*Savage's Workers Are Injured and Receive Workers' Compensation Benefits*

While Savage was performing work at Exxon's Baytown Refinery, two of its employees—Kevin Roberts and Arturo Munoz—were seriously burned when a tank exploded and there was a discharge of hot water. Because Roberts and Munoz were injured during the course and scope of their employment with Savage, Savage's workers' compensation insurer, ICSP, paid them benefits. ICSP paid $115,189.64 to Roberts and $571,296.88 to Munoz.

*The Lawsuit*

Roberts filed suit against Exxon, while Munoz negotiated with Exxon without the benefit of counsel. During settlement negotiations, Exxon approached ICSP about acknowledging a waiver of its subrogation rights, which ICSP was unwilling to do. Exxon then added ICSP as a third-party defendant in the Roberts suit, seeking a declaratory judgment that ICSP had waived its subrogation rights against Exxon. Exxon also filed a Motion for Summary judgment regarding the same. ICSP then removed the case to federal court, but it was ultimately remanded.

In March 2014, Exxon reached a settlement with Roberts on his personal injury claims, and in September 2014, Exxon reached a settlement with Munoz. ICSP alleges in its appellate brief, and Exxon does not dispute, that Exxon's negligence was the cause of the accident that injured Roberts and Munoz.

In September 2014, Exxon filed an amended Motion for Summary Judgment contending that ICSP had waived its subrogation rights against Exxon. Roberts joined in Exxon's motion.

On February 19, 2015, the Honorable Elizabeth Ray denied Exxon's Motion for Summary Judgment against ICSP. Exxon filed a Motion for Rehearing, which was heard by the Honorable Jeff Shadwick because Judge Ray had left the bench in the interim. Judge Shadwick granted the Motion for Rehearing, and entered a final summary judgment in favor of Exxon and ordering that ICSP take nothing on its claims for subrogation and a credit against future benefits.

This appeal by ICSP followed.

## ISSUES ON APPEAL

*Issues Presented*

ICSP asserts the following three issues on appeal:

1. The trial court erred in holding that ICSP's worker's compensation subrogation claims were waived, as the waiver of subrogation provisions only apply to liabilities assumed by Savage. As Savage was not obligated to indemnify Exxon for this accident, the waiver does not apply.

2. Even if there is an enforceable waiver of subrogation in favor of Exxon, the trial court erred in holding that ICSP's right to assert that Roberts' and Munoz's third-party recovery constituted an advance against future benefits was also waived.

3. Exxon's affidavit of T. Lynn Henegan cannot be any basis for affirming the trial court's summary judgment.

*Standard of Review*

We review a summary judgment under a de novo standard. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The well-settled principles governing the review of summary judgments apply in insurance disputes. *See Hanson v. Republic Ins. Co.*, 5 S.W.3d 324, 327 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). The movant for a traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant is entitled to summary judgment if the defendant negates at least one essential element of the plaintiff's cause of action. *See Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). We review the summary judgment evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable fact finders could, and disregarding contrary evidence unless reasonable fact finders could not. *Mann Frankfort*, 289 S.W.3d at 848; *see also Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004).

"Subrogation" is the right of one who has paid an obligation that another should have paid to be indemnified by the other. *Texas Ass'n of Sch. Bds., Inc. v. Ward*, 18 S.W.3d 256, 258 (Tex. App.—Waco 2000, pet. denied). The object of such subrogation is to prevent the insured from receiving a double recovery. *Argonaut Ins. Co. v. Allstate Ins. Co.*, 869 S.W.2d 537, 541 (Tex. App.—Corpus Christi 1993, writ denied). An insurer's right to subrogation derives from the rights of the insured and is limited to those rights. *Interstate Fire Ins. Co. v. First Tape, Inc.*, 817 S.W.2d 142, 145 (Tex. App.—Houston [1st Dist.] 1991, writ denied). A release between the insured and an offending party prior to a loss destroys the insurance company's rights by way of subrogation. *Id.*

Texas law requires that the first money recovered by an injured worker from a tortfeasor go to the workers' compensation carrier, and until the carrier "is paid in full the employee or his representatives have no right to any funds." *Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 33 (Tex. 2008) (quoting *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 530 (Tex. 2002)). However, subrogation rights may be waived or altered by contract. *Trinity Universal Ins. Co. v. Bill Cox Constr., Inc.*, 75 S.W.3d 6, 8 (Tex. App.—San Antonio 2001, no pet.).

When interpreting an insurance policy, we follow the "general rules of contract construction to ascertain the parties' intent." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). We begin with

7

the language of the policy because we presume the parties intend what the words of their contract say. *Id.* Courts must try to give effect to all contractual terms so none will be rendered meaningless. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). Courts must read all provisions together and give each provision its intended effect. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994).

## WAIVER OF SUBROGATION RIGHTS BY ICSP?

In issue one, ICSP contends the trial court erred in granting Exxon's Motion for Summary Judgment. Specifically, ICSP contends that the subrogation waiver in the "Texas Waiver of Our Right to Recover From Others Endorsement" was never triggered in this case because Savage never "assumed liability" for Exxon's negligence, as required of section 14(a) of the contract between Exxon and Savage. Savage contends that we must look at the indemnity provisions in section 12 of the Exxon/Savage contract to determine which liabilities Savage assumed. Because Savage had no duty to indemnify Exxon for Exxon's own negligence, ICSP contends that Savage never "assumed liability" for the injuries in this case, and thus had no contractual duty to seek a waiver of subrogation rights from its insurer, ISCP.

Exxon responds, however, that we need not look at the underlying contract between Exxon and Savage, but only at the language of the policy, i.e., the "Texas

8

Waiver of Our Right to Recover From Others Endorsement." Thus, the initial issue this Court must decide is whether we are confined to reviewing the language of the endorsement itself, or whether we are further required to consider the underlying Exxon/Savage contract in determining whether ICSP has waived its subrogation rights as against Exxon.

*Should the Court Consider the Exxon/Savage Contract?*

Exxon argues that "[t]he focus belongs on the insurance policy, not the underlying service contract." We agree that "our inquiry must begin with the language in an insurance policy." *In re Deepwater Horizon*, 470 S.W.3d 452, 460 (Tex. 2015).

Here, the endorsement at issue provides:

> We [ICSP] have the right to recover our payments from anyone liable for an injury covered by this policy. **We will not enforce our right against the** person or **organization named in the Schedule**, but **this waiver applies only** with respect to bodily injury arising out of the operations described in the Schedule *where [Savage is] required by a written contract to obtain this waiver from us*. (emphasis added).

The Schedule does not name Exxon explicitly, but provides that the waiver is provided to "[a]ny person or organization for whom [Savage] has agreed by written contract to furnish this waiver."

Exxon contends that our analysis stops here because there are only three requirements in the policy: (1) the underlying claims must be for "bodily injury," (2) arising from "operations, (3) identified in the Schedule." Exxon further

9

contends that all three requirements have been met here, including the third, because "Savage agreed in a written contract with [Exxon] to obtain a waiver of subrogation rights." Exxon urges the court to stop here in its analysis without looking to the underlying contract to determine whether Savage was obligated to furnish Exxon with such a waiver in this case under the terms of a written contract.

We disagree. The Texas Supreme Court addressed a similar issue regarding additional insured status in the *Deepwater Horizon* case. *See* 470 S.W.3d at 460. The court began its analysis by noting that:

> [W]e determine the scope of coverage from the language employed in the insurance policy, and if the policy directs us elsewhere, we will refer to an incorporated document to the extent required by the policy. Unless obligated to do so by the terms of the policy, however, we do not consider coverage limitations in underlying transactional documents.

*Id.*

In that case, the insurance policy referenced the underlying contract in two places. In the first, the insurer agreed that "*where required by written contract . . . additional insureds are automatically included hereunder.*" *Id.* at 458 (emphasis added). The policy also defined an "Insured" as "any person or entity to whom the 'Insured' *is obliged by an oral or written 'Insured Contract' . . . to provide insurance* such as is afforded by this Policy." *Id.* at 472 (emphasis added). The Court, relying on these two references to the underlying contract in the insurance policy itself, held that the references served to incorporate the terms of the

underlying contract (and its coverage limitations) into the insurance policy, thereby requiring that the underlying contract to be consulted in order to interpret the insurance policy. *Id.* at 464.

The same is true in this case. The insurance endorsement twice refers to the underlying contract between Exxon and Savage. First, it states that "this waiver [of ISCP's subrogation rights] applies only with respect to bodily injury arising out of the operations described in the Schedule *where [Savage is] **required by a written contract*** to obtain this waiver from us." (emphasis added). Second, the Schedule indicates that the blanket waiver of ISCP's subrogation rights benefits "[a]ny person or organization for whom [Savage] has agreed ***by written contract*** to furnish this waiver." To determine whether Savage was "required by a written contract" to cause its insurer to waive subrogation rights in favor of Exxon, we must necessarily consider the terms of the contract between Exxon and Savage, just as the supreme court considered the underlying contract in the *Deepwater Horizon* case to determine whether additional assured coverage was "obliged" or "required" by contract. Thus, we decline Exxon's invitation to ignore the terms of the underlying contract between Exxon and Savage in determining whether there are any limitations to the ISCP's waiver of subrogation endorsement.

11

*Does the Exxon/Savage Contract Limit Application of the Waiver Endorsement?*

Instead, we must determine whether the Exxon/Savage Contract provides any limitations on the waiver of subrogation found in the endorsement. To do so, we consider the language of the Exxon/Savage Contract, which provides that "[Savage] and its insurer(s) providing coverage in this Section shall waive all rights of subrogation and/or contribution against [Exxon] and its Affiliates *to the extent liabilities are assumed by [Savage]* . . . ." (emphasis added).

The language of the contract clearly requires Savage and its insurers to waive subrogation "to the extent liabilities are assumed by [Savage]," but the parties disagree on the meaning of "liabilities . . . assumed." Exxon argues that "liabilities . . . assumed by [Savage]" should be interpreted very broadly to mean all legal responsibilities undertaken in the contract, and that, because Savage assumed the "liability," i.e., "legal responsibility" to provide workers' compensation insurance, the phrase "to the extent liabilities are assumed by [Savage]" does not act as a limitation on Savage's contractual duty to obtain a waiver of subrogation from its insurer. In contrast, ICSP argues that "liabilities . . . assumed by [Savage]" should be interpreted more narrowly to refer to legal indemnity liabilities imposed on Savage by way of the indemnity provisions of the Exxon/Savage Contract. We agree with ICSP.

12

In *Liberty Insurance Corporation v. SM Energy*, 2012 WL 6100303 (S.D. Tex. 2012), a case cited by Exxon to support its argument that reference to the underlying contract is unnecessary, the federal district court did just the opposite—it looked to the underlying contract to determine the "risks and liabilities assumed" by the insured/contractor because, in that case, as here, the insurer's subrogation waiver was limited to the "risks and liabilities assumed by the Contractor." *Id.* at *4. Specifically, the court looked at the indemnity clauses of the underlying contract before determining that the indemnification obligation of the insured was very broad, and the insured had contracted to indemnify the owner even for the owner's own negligence. *Id.* at *5. Because the insured had, in fact, "assumed the risk and liability," through the indemnity provisions, of even the owner's own negligence, the subrogation waiver applied in the owner's favor. *Id.* This case supports ICSP's contention that we must look to the indemnity clause of the Exxon/Savage Contract to determine what liabilities Savage has assumed, and that only those instances in which Savage has promised to indemnify Exxon will trigger Savage's obligation to obtain a waiver of subrogation rights from ICSP.

The Texas Supreme Court has also interpreted similar "assumed liability" language in a contract requiring a subrogation waiver by looking to the indemnity provisions in the contract to determine the "liabilities," assumed by the insured

13

party. *See Ken Petroleum Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 355–56 (Tex. 2000).[1] Only when the insured was required to indemnify the other party to the contract was its duty to obtain a waiver of subrogation triggered. *Id.*

In *Ken Petroleum*, the contract provided:

> For ***liabilities assumed*** hereunder by [Questor], its insurance shall be endorsed to provide that the underwriters waive their right of subrogation against [Ken Petroleum]. [Ken Petroleum] will, as well, cause its insurer to waive subrogation against [Questor] for ***liability it assumes***." (emphasis added).

The supreme court interpreted the "liabilities assumed" language to mean that "Ken Petroleum agreed to cause its underwriters to waive their subrogation rights only as to amounts Ken Petroleum might have to pay under its agreement to indemnify Questor." *Id.* at 355. Because the indemnity clause in the contract did not require Ken Petroleum to indemnify Questor for injuries to Questor's employees, the waiver of subrogation by Ken Petroleum's insurer was never triggered. *Id.* at 354–55.

The *Deepwater Horizon* case considered the insurance provision of a drilling contract that required BP to be named as an additional insured "for ***liabilities assumed*** by [Transocean] under the terms of this contract." 470 S.W.3d at 465.

---

[1] We reject Exxon's argument that *Ken Petroleum* is not relevant authority because "[t]he claims were between the two parties to the underlying service contract— Ken Petroleum and Questor—not between a party to the contract and the insurer." Indeed, Ken Petroleum's insurers were, in fact, parties to the appeal, and the motion for summary judgment involved in the appeal "also dealt with the rights and obligations of Ken Petroleum's underwriters." 24 S.W.3d at 355.

The supreme court stated that "[i]t is immediately apparent from the plain language of this provision that BP's status as an insured is inexorably linked, at least in some response, to the extent of Transocean's *indemnity obligations*."  *Id.* (emphasis added). According to the supreme court, the plain language of the "liabilities assumed" language in the insurance paragraph of the contract required the court to examine the indemnity provisions of the contract to determine the proper application of the insurance paragraph.  "Because the scope of Transocean's duty to indemnify governs the scope of Transocean's duty to insure BP, we decline BP's request to ignore the indemnity obligations when construing the Drilling Contract."  *Id.* at 468.  Thus, the *Deepwater Horizon* case supports the analysis suggested by ICSP by requiring us to consider the indemnity provisions of the contract to determine whether Savage has "assumed liability" and triggered its duty to obtain a waiver of subrogation from ICSP.

Finally, in *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 130 (Tex. App.—Houston [1st Dist.] 2002, writ denied), Tesoro and Nabors agreed to "cause their insurers to waive subrogation against the other *for the liabilities that are assumed by the insured*."  *Id.* at 129 (emphasis added). This Court then looked to the indemnity agreement between the parties to determine whether Nabors had "assumed liability" for the losses its insurer, Zurich, had paid to Nabors.  *See id.* at 133.  Under the indemnity agreement, Nabors did

15

not "assume liability" for Tesoro's own gross negligence, thus Nabors's insurer, Zurich, had not waived its subrogation rights. *Id.* at 133–34. Again, *Tesoro* supports ICSP's argument that we should look at the indemnity provisions of the Exxon/Savage contract to determine whether Savage "assumed liability" for the loss in this case, and that only in cases wherein Savage is required to indemnity Exxon would ICSP be required to waive its subrogation rights.

In contrast to *SM Energy*, *Ken Petroleum*, *Deepwater Horizon*, and *Tesoro*, Exxon cites no cases that have interpreted the "liabilities . . . assumed by" language as a reference to *any* contractual obligation undertaken by the insured. Indeed, such an interpretation would effectively eliminate the phrase "to the extent liabilities are assumed by [Savage]" and render it meaningless and redundant by providing that the waiver was required anytime Savage undertook any contractual obligation to Exxon. We cannot read the phrase in such an expansive way; courts must try to give effect to all contractual terms so none will be rendered meaningless. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998).

Therefore, we conclude that the indemnity provisions of the Exxon/Savage contract limit the scope of Savage's duties under the insurance clause, and that we must look at the indemnity provisions of the Exxon/Savage contract to determine whether Savage "assumed liability," i.e., had a duty to indemnify Exxon under the

16

circumstances of this case. Absent such a duty to indemnify Exxon, Savage was not required to obtain a waiver of subrogation rights from its insurer ICSP. Thus, we turn to the indemnity provisions of the Exxon/Savage Contract to determine Savage's indemnity obligations thereunder.

*Did Savage "Assume Liability" under the Indemnity Provisions of the Exxon/Savage Contract?*

The relevant indemnity provision in this case provides:

[Exxon] and [Savage] shall indemnify, defend, and hold each other harmless from all claims, demands, and causes of actions asserted against the indemnitee by any third party (including, without limitation [Exxon's] and [Savage's] employees) for personal injury, death, or loss of or damage to property resulting from the indemnitor's negligence, Gross Negligence, or Willful Misconduct.

There is no disagreement between the parties as to the meaning of this provision. Savage agreed to indemnify Exxon for personal injury claims resulting from Savage's own negligence, gross negligence, or willful misconduct. Savage did not agree to indemnify Exxon for personal injury claims attributable to Exxon's own negligence, gross, negligence, or willful misconduct.

Likewise, there is no disagreement between the parties as to whose negligence caused the injuries to Savage's employees. There have been no allegations made in this case that the injuries were caused by anyone's negligence other than Exxon's. Savage is not required to indemnify Exxon for Exxon's own negligence.

17

Because Savage was not required to indemnify Exxon under the indemnity provisions of section 12 of the Exxon/Savage Contract, it did not "assume liability" under insurance provisions of section 14 of the Exxon/Savage Contract.  Because Savage did not "assume liability" for the damages alleged in this suit, it was not contractually obligated to cause its insurer to waive its subrogation rights against Exxon.  Because the Exxon/Savage Contract did not require Savage to obtain a waiver of subrogation from ICSP under these circumstances, the policy endorsement containing the waiver by ICSP is not applicable. Thus, we conclude that ICSP has not waived its right to seek subrogation from Exxon, and the trial court erred in holding otherwise.

We sustain ICSP's first issue on appeal.  In light of our disposition of ICSP's first issue, we need not address its remaining two issues, and we decline to do so.

## CONCLUSION

We reverse the judgment and remand for further proceedings.


                                    Sherry Radack
                                    Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.