Opinion issued July 26, 2016



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-15-00406-CV

—————————————

**NEW HAMPSHIRE INSURANCE COMPANY, Appellant**

**V.**

**CANDIS MORA, INDIVIDUALLY, AND AS NEXT FRIEND OF ANTHONY LORENZO DEAN MORA, EMMA ELISHA MORA, AND FRANCISCO JOHN MORA, MINOR CHILDREN, AND AS PERSONAL REPRESENTATIVE OF AND HEIR TO THE ESTATE OF ANTHONY BYRON MORA, DECEASED, Appellees**

---

**On Appeal from the 165th District Court
Harris County, Texas
Trial Court Case No. 2011-47304**

---

## O P I N I O N

In this appeal, we consider whether the trial court erred in granting summary

judgment declaring that a subcontractor's workers' compensation carrier had waived

its rights of subrogation entitling it to recoup payments made on behalf of its insured. We reverse and remand.

## BACKGROUND

*Laredo Hires Trinidad—The Relevant Contract Provisions*

Laredo Petroleum, Inc. [Laredo] was the operator of rig 204, and Trinidad Drilling, Ltd. [Trinidad] was the contractor Laredo hired to perform drilling work on rig 204. The Laredo/Trinidad contract provided that Laredo would obtain certain insurance coverages and obtain certain waivers of its insurers' subrogation rights against Laredo. Specifically, paragraph 13 of the Laredo/Trinidad contract provided as follows:

> During the life of this Contract, *[Trinidad] shall* at [Trinidad's] expense, *maintain,* with an insurance company or companies authorized to do business in the state where the work is to be performed or through a self-insurance program, *insurance coverages of the kind and in the amount set forth in Exhibit "A", insuring the liabilities specifically assumed by [Trinidad] in Paragraph 14 of this Contract.* [Trinidad] shall procure from the company or companies writing said insurance a certificate or certificates that said insurance is in full force and effect that the same shall not be canceled or materially changed without thirty (30) days prior written notice to [Laredo]. *For liabilities assumed hereunder by [Trinidad], its insurance shall be endorsed to provide that the underwriters waive their right of subrogation against [Laredo].* [Laredo] will, as well, cause its insurer to waive subrogation against [Trinidad] for liability it [Laredo] assumes and shall maintain, at [Laredo's] expense, or shall self-insure, insurance coverage as set forth in Exhibit "A" of the same kind and in the same amount as is required of [Trinidad], insuring the liabilities specifically assumed by [Laredo] in Paragraph 14 of this Contract. [Laredo] shall procure from

2

the company or companies writing said insurance a certificate or certificates that said insurance is in full force and effect and that the same shall not be canceled or materially changed without thirty (30) days prior written notice to [Trinidad]. [Laredo] and [Trinidad] shall cause their respective underwriters to name [Trinidad's] Group and [Laredo's] Group, as appropriate, as an additional insured but only to the extent of the risks, obligations and liabilities assumed by operation of this Contract, including, but not limited to, the drilling rig. (emphasis added).

Worker's Compensation Insurance is listed in Exhibit "A," and in accordance with its obligation under paragraph 13 of the Laredo/Trinidad contract, Trinidad obtained worker's compensation insurance from New Hampshire Insurance Company [NHIC], which contained the following endorsement, providing in relevant part:

> [NHIC has] the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where [Trinidad is] required by a written contract to obtain this waiver from [NHIC].
>
> This agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.
>
> . . . .
>
> (X) Blanket waiver
> Any person or organization for whom [Trinidad] has agreed by written contract to furnish this waiver.

The Laredo/Trinidad contract also contained several indemnity provisions. The two provisions relevant here are amended paragraph 14.8 and paragraph 14.7.

Amended Paragraph 14.8 provides:

> **[Trinidad's] Indemnification of [Laredo]:** *[Trinidad] shall* release [Laredo] and [Laredo's] Parties from any liability for, and shall protect, defend and ***indemnify [Laredo] and [Laredo's] Parties***, its officers, directors, employees and joint owners ***from and against all claims demands and causes of action*** of every kind and character, without limit and ***without regard to*** the cause or causes of action thereof or ***the negligence of any party or parties, arising in connection herewith in favor of [Trinidad's] employees*** or [Trinidad's] subcontractors or their employees, or [Trinidad's] invitees (collectively . . . "[Trinidad's] Parties"), ***on account of bodily injury, death or damage to the property***. [Trinidad] shall further release [Laredo] and [Laredo's] Parties of any liability for, and protect, defend and indemnify [Laredo], its officers, directors, employees and joint owners from and against all claims, demands and causes of action of every kind and character, without limit, arising in connection herewith in favor of any third party or parties (excluding "[Laredo's] Parties"), on account of bodily injury, death or damage to property caused by the negligent or willful acts of [Trinidad's] Parties. Likewise, [Trinidad] shall be responsible and shall protect, defend and indemnify [Laredo], its officers, directors, employees and joint owners from and against any fines or sanctions imposed by any governmental agency or authority arising from any unlawful act or acts committed by [Trinidad's] Parties while in the course of performance of this Contract. [Trinidad's] indemnity under this paragraph shall be without regard to and without any right to contribution from any insurance maintained by [Laredo] pursuant to Paragraph 13. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily assumed under Paragraph 14.8 (which [Trinidad] and [Laredo] hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnities, or voluntarily self-insured, in part of whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance provisions of this paragraph shall be subject to those contained elsewhere in this contract (including Paragraph 14.11). In case of conflict, the other provisions of this contract shall govern. (emphasis added).

The Trinidad/Laredo contract also has a specific indemnity provision for "materials" furnished by Laredo in paragraph 14.7, which provides:

> **Inspection of Materials Furnished by [Laredo]:** [Trinidad] agrees to visually inspect all materials furnished by [Laredo] before using same and to notify [Laredo] of any apparent defects therein. ***[Trinidad] shall not be liable for any loss or damage resulting from the use of materials furnished by [Laredo], and [Laredo] shall*** release [Trinidad] from, and shall protect, defend and ***indemnify [Trinidad] from and against, any such liability***. (emphasis added).

*Trinidad's Worker is Killed and His Family Receives Worker's Compensation Benefits*

On February 7, 2011, Trinidad's employee, Anthony Bryan Mora, was killed while working on Laredo's rig. Mora was electrocuted while working with an electric transfer pump, which Laredo had leased and provided for Trinidad's use at the well site. Because Mora was killed during the course and scope of his employment with Trinidad, Trinidad's worker's compensation insurer, NHIC, paid benefits to his family. As of September 8, 2014, the total amount of benefits paid by NHIC was $143,242, and NHIC was continuing to pay benefits to Mora's widow and children.

*The Lawsuit*

On August 10, 2011, the Mora family filed suit against multiple defendants asserting wrongful death and survival claims. In May 2014, NHIC intervened in the suit to establish its subrogation rights. On September 8, 2014, the Moras and certain

defendants filed a motion for summary judgment related to NHIC's subrogation claims, and NHIC filed its response shortly thereafter.

In October 2014, the Moras entered into a confidential settlement with the defendants. NHIC's subrogation claims as intervenor remained pending. On February 13, 2015, the trial court entered summary judgment in favor of the Moras and against NHIC on its subrogation claims.

On February 27, 2015, the trial court signed a stipulation between the Moras and NHIC, wherein the Moras agreed to "escrow the sum of $250,000 out of the settlement to cover the anticipated amount of past and future death benefits to be paid by NHIC during the pendency of an appeal of this case." Based on this escrow agreement, NHIC is solely pursuing its subrogation rights against the Moras on appeal.

On April 15, 2015, the trial court entered a final order of dismissal of the Mora's claims against the defendants, and thereafter the trial court entered an agreed final judgment and minor settlement approval. These orders made the interlocutory summary judgment against NHIC final and appealable, and this appeal by NHIC followed.

## ISSUES ON APPEAL

*Issues Presented*

NHIC asserted the following three issues on appeal:

6

1.  The trial court erred in holding that NHIC's worker's compensation subrogation claims were waived, as the waiver of subrogation provisions only pertain to general liability insurance coverage that the parties were required to secure for their indemnity obligations.

2.  The trial court erred in holding that NHIC's worker's compensation subrogation claims were waived, as Trinidad did not assume the liabilities of the defendants for this accident.

3.  The trial court erred in holding that NHIC waived its rights of subrogation against the non-Laredo defendants, as any possible waiver of subrogation as to worker's compensation benefits is limited to claims against Laredo.

*Standard of Review and Applicable Law*

We review a summary judgment under a de novo standard. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The well-settled principles governing the review of summary judgments apply in insurance disputes. *See Hanson v. Republic Ins. Co.*, 5 S.W.3d 324, 327 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). The movant for a traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant is entitled to summary judgment if the defendant negates at least one essential element of the plaintiff's cause of action. *See Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of

7

material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). We review the summary judgment evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable fact finders could, and disregarding contrary evidence unless reasonable fact finders could not. *Mann Frankfort*, 289 S.W.3d at 848; *see also Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004).

"Subrogation" is the right of one who has paid an obligation that another should have paid to be indemnified by the other. *Tex. Ass'n of Sch. Bds., Inc. v. Ward*, 18 S.W.3d 256, 258 (Tex. App.—Waco 2000, pet. denied). The object of such subrogation is to prevent the insured from receiving a double recovery. *Argonaut Ins. Co. v. Allstate Ins. Co.*, 869 S.W.2d 537, 541 (Tex. App.—Corpus Christi 1993, writ denied). An insurer's right to subrogation derives from the rights of the insured and is limited to those rights. *Interstate Fire Ins. Co. v. First Tape, Inc.*, 817 S.W.2d 142, 145 (Tex. App.—Houston [1st Dist.] 1991, writ denied). A release between the insured and an offending party prior to a loss destroys the insurance company's rights by way of subrogation. *Id.*

Texas law requires that the first money recovered by an injured worker from a tortfeasor go to the worker's compensation carrier, and until the carrier "is paid in full the employee or his representatives have no right to any funds." *Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 33 (Tex. 2008) (quoting *Argonaut Ins. Co. v. Baker*,

87 S.W.3d 526, 530 (Tex. 2002)). However, subrogation rights may be waived or altered by contract. *Trinity Universal Ins. Co. v. Bill Cox Constr., Inc.*, 75 S.W.3d 6, 8 (Tex. App.—San Antonio 2001, no pet.).

When interpreting an insurance policy, we follow the "general rules of contract construction to ascertain the parties' intent." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). We begin with the language of the policy because we presume the parties intend what the words of their contract say. *Id.* Courts must try to give effect to all contractual terms so none will be rendered meaningless. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). Courts must read all provisions together and give each provision its intended effect. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994).

## WAIVER OF SUBROGATION RIGHTS BY NHIC?

In issue two, which we address first because we find it to be dispositive, NHIC contends the trial court erred in granting the Moras' Motion for Summary Judgment. Specifically, NHIC contends that the subrogation waiver in the endorsement to policy it provided to Trinidad was never triggered in this case because Trinidad "did not assume the liabilities of the defendants for this accident."

*Framework for Addressing Waiver-of-Subrogation Claims*

9

This Court recently considered a similar waiver-of-subrogation rights issue in *The Insurance Company of the State of Pennsylvania v. Roberts*, 01-15-00453-CV, 2016 WL 3902163 (Tex. App.—Houston [1st Dist.] July 14, 2016, no pet. h.). In doing so, the Court established a framework for addressing such claims. First, we must look to the language of the policy itself to determine whether there is a waiver-of-subrogation provision. *Id.* at *3. Second, if there is a waiver-of-subrogation provision in the insurance contract, we next consider whether the language of the insurance contract requires us to look to the terms of another contract referenced therein to determine the waiver's applicability. *Id.* at *4. If the insurance policy provides that the waiver is only applicable when "required by a written contract," we necessarily look to the insurance terms in the referenced contract to determine whether the waiver is required. *Id.* Finally, if the referenced contract limits the waiver-of-subrogation rights to "liabilities assumed" by the insured, we must consider the indemnity provisions of the contract to determine which liabilities the insured assumed. *Id.* at *5–6. If the indemnity provisions require the insured to indemnify another party for the accident, the insured has "assumed liability" for the accident, the waiver-of-subrogation provision in the insurance policy is "required by contract," and the waiver-of-subrogation provision in the insurance policy is applicable and prevents the insurer from exercising its subrogation rights. *Id.* at *7. In *Roberts*, we held that the waiver-of-subrogation endorsement did not apply, the

worker's compensation insurer did not waive its subrogation rights, and its insured had not "assumed liability" for the accident because the underlying contract, to which reference was made in the insurance policy, did not require the insured to indemnify another party for the accident. *Id.*, *compare with Liberty Ins. Corp. v. SM Energy*, 2012 WL 6100303 (S.D. Tex. 2012) (holding waiver-of-subrogation clause in policy did apply because insured, under broad indemnification clause in referenced contract, had an obligation to indemnify other party to contract).

*Application*

Here, the waiver-of-liability endorsement provides that it applies in favor of anyone for whom Trinidad "has agreed by written contract to furnish this waiver." Thus, we look to the insurance provisions of the Laredo/Trinidad contract to determine whether Trinidad has agreed to provide such a waiver. *Roberts*, at *4. The insurance clause of the Laredo/Trinidad contract requires Trinidad to obtain such a waiver from its insurer "for liabilities assumed hereunder." Therefore, we must look to the indemnity provisions of the contract to determine whether Trinidad assumed liability for the death of its employee. *Id.* at *5-6.

The Moras argue that Trinidad assumed liability for the accident in paragraph 14.8, which provides that "[Trinidad] shall release [Laredo] . . . from any liability for, and shall . . . indemnify [Laredo] . . . from and against all claims . . , without limit and without regard to the cause or causes of action thereof or the negligence of

11

any party or parties, arising in connection herewith in favor of [Trinidad's] employees . . . on account of bodily injury, death or damage to the property."

We agree that, under this very broad indemnification paragraph, Trinidad agrees to indemnify Laredo for claims arising out of the death of Trinidad's employees. Were we to stop our analysis here, we would necessarily conclude that, since Trinidad assumed liability for the death of its employee, the waiver-of-subrogation clause was triggered and NHIC would have no subrogation rights to assert.

However, as pointed out by NHIC, this is not the only indemnity clause in the Laredo/Trinidad contract. Paragraph 14.7 provides that "[Trinidad] shall not be liable for any loss or damage resulting from the use of materials furnished by [Laredo], and [Laredo] shall release [Trinidad] from, and shall protect, defend and indemnify [Trinidad] from and against, any such liability." NHIC argues that, under this indemnity provision, Trinidad does not "assume liability" for Mora's death because the death was caused was caused by a defective electric transfer pump, which was a "material" furnished by Laredo. The Moras, however, argue that the transfer pump is not a "material," but "equipment." As "equipment," the Moras contend that paragraph 14.7 does not apply, and that if 14.7 does not apply, paragraph 14.8 does, and that Trinidad did assume liability under paragraph 14.8.

This Court has considered and rejected the Moras' argument in *Sonerra Resources Corp. v. Helmerich & Payne Intern'l Drilling Co.*, No. 01-11-00459-CV, 2012 WL 3776428, at \*6 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, pet. ref'd). In *Sonerra*, the plaintiff, McDaniel, sued Sonerra, the operating company that provided the rotating-control device that injured McDaniel while he was working for H&P, a drilling contractor for Sonerra. *Id.* at \*1. Sonerra filed a cross-claim against H&P, claiming that an indemnity provision in the contract required H&P to indemnify Sonerra. *Id.* The contract provision at issue in *Sonerra* is almost identical to the provision in the present case and provides:

> Inspection of Materials furnished by [Sonerra]: [H&P] agrees to visually inspect all materials furnished by [Sonerra] before using same and to notify [Sonerra] of any apparent defects therein. [H&P] shall not be liable for any loss or damage resulting from the use of materials furned by [Sonerra], and [Sonerra] shall release [H&P] from, and shall protect, defend and indemnify [H&P] from and against, any such liability.

*Id.* Sonerra argued that the above-referenced indemnity provision did not apply because the injury was caused by a defective seal on a rotating-control device that was "equipment," not a "material." *Id.* at \*5. This Court, after examining the entire contract, disagreed, stating, "Although the term "materials" is not expressly defined in the drilling contract, it is a term that is used throughout the contract in conjunction with other similar terms, including "equipment." *Id.* The Court then noted several other placed in the contract where "equipment" and "materials" were used

13

interchangeably. *Id.* In support of its conclusion, the Court pointed to several clauses in the Sonerra/H&P contract that referred to both "materials" and "equipment" without distinguishing between those terms. *Id.* Specifically, the court focused on Exhibit A to the contract, and pointed out that several paragraphs in Exhibit A listed "machinery, equipment, tools, materials, supplies, instruments, services, and labor" to be provided by each party while making "no effort to identify whether each of the [listed] items constitutes 'machinery,' 'equipment,' 'tools,' 'materials,' or 'supplies.'" *Id.* The Court also pointed to a paragraph in the contract wherein Sonerra agreed to reimburse H&P for certain costs of "material" and "equipment," and a paragraph wherein the parties set forth indemnity obligations for consequential damages relating to "equipment" and "materials." *Id.* After examining the Sonerra/H&P contract as the whole, this Court concluded that "there is simply no indication in the written contract that [the terms "materials" and "equipment"], as used throughout the contract are mutually exclusive and refer to a distinct set of items." *Id.* "The plain language of article 14.7, when considered in the context of the drilling contract, indicates that the parties used the term "materials" to generally refer to the physical items that were to be provided by Sonerra at the well." *Id.* at *6.

The present case is indistinguishable from *Sonerra*. The Laredo/Trinidad contract contains all of the same provisions that this Court relied on in deciding

14

*Sonerra*. Thus, we are bound by the holding in *Sonerra*,[1] which compels the conclusion that, under paragraph 14.7 of the contract, Trinidad did not "assume liability" for damage caused by the transfer pump, which was provided by Laredo. Indeed, Laredo under paragraph 14.7, Laredo was required to indemnify Trinidad.

*Summary*

Because Trinidad was not required to indemnify Laredo under the indemnity provisions of section 14.7 of the Laredo/Trinidad Contract, it did not "assume liability" under insurance provisions of section 13 of the Laredo/Trinidad Contract. Because Trinidad did not "assume liability" for the damages alleged in this suit, it was not contractually obligated to cause its insurer to waive its subrogation rights. Because the Laredo/Trinidad contract did not require Trinidad to obtain a waiver of subrogation from NHIC under these circumstances, the policy endorsement containing the waiver by NHIC is not applicable. Thus, we conclude that NHIC has not waived its right to seek subrogation, and the trial court erred in holding otherwise. We sustain NHIC's second issue on appeal. In light of our disposition of NHIC's second issue, we need not address its remaining two issues, and we decline to do so.

**CONCLUSION**

---

[1]   We decline to revisit the holding of *Sonerra* or to hold that it was "incorrectly decided," as urged by the Moras.

15

We reverse the judgment and remand for further proceedings.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.