Opinion issued March 15, 2018



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00543-CV

———————————

**GINGER B. STAGG, D.D.S., P.A., Appellant**

**V.**

**LISA RICHARDSON, D.D.S., P.A., Appellee**

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 83644-CV**

---

## MEMORANDUM OPINION

This suit arises out of a dispute between two partners over the terms of an agreement dissolving their former dental practice. The trial court granted summary judgment, determining that one partner properly retained $25,000 in operating capital upon dissolution of the partnership. Because we conclude that the agreement

required the partner to pay that capital to the outgoing partner, we reverse the trial court's judgment, render judgment that Ginger Stagg, D.D.S., P.A. recover $25,000 from Lisa Richardson, D.D.S., P.A., and remand this cause to the trial court for the award of fees, costs, interest, and the entry of a final judgment consistent with this opinion.

## BACKGROUND

Lisa Richardson and Ginger Stagg are dentists who individually formed professional associations, which in turn formed a pediatric dental partnership in July 2009. At that time, Stagg purchased a 50% interest in the partnership from Richardson for $735,000. By February 2016, the partnership was no longer harmonious and litigation ensued. Richardson and Stagg entered into a mediated settlement agreement providing for the dissolution of their dental practice. Under its terms, Richardson agreed to buy Stagg's interest in the practice for $1,000,000. Once this sum was paid, Stagg was required to leave the practice within 10 days. Stagg also was to receive "an additional amount for any production outstanding at the time she leaves, which shall be computed based on the normal percentage for any amounts collected on the outstanding production."

Richardson and Stagg subsequently learned, however, that their practice did not maintain the records needed to calculate the outstanding amount due to Stagg under the agreement. So they executed an addendum specifying a new method of

2

computation. The addendum provided that the partnership's accountant would "perform the customary partner-splits analysis that incorporates Stagg's production" and that Richardson would "pay Stagg the 'Net Amount Due to [Stagg].'"

The partnership's accountant made the required partner-splits analysis. In relevant part, the accountant calculated as follows:

|  | Total | Dr. Richardson | Dr. Stagg |
|---|---|---|---|
| Net Amount Due to Each Doctor | 64,043.64 | 29,270.00 | 34,773.64 |
| Operating capital to be retained in partnership | (50,000.00) | (25,000.00) | (25,000.00) |
| Available Cash to Each Doctor | 14,043.64 | 4,270.00 | 9,773.64 |

Richardson contended that she owed Stagg only the "available cash" amount, or $9,773.64, which she paid. Stagg contended that she was entitled to the "Net Amount Due," or $34,773.64, under the partner-splits analysis. Both sides moved for summary judgment. The trial court denied Stagg's motion and granted Richardson's.

## DISCUSSION

Both sides agree that the terms of the addendum are unambiguous. Stagg contends that the addendum's phrase "Net Amount Due to [Stagg]" refers to Stagg's portion of the "Net Amount Due to Each Doctor" required by the addendum.

3

Richardson responds that her purchase of Stagg's partnership interest included the partnership's operating capital and that she therefore only owes the "Available Cash Due to [Stagg]" under the addendum.

## A. Standard of review

We review summary judgments de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When the parties file cross-motions for summary judgment and the material facts are not in dispute, we consider their motions and the summary-judgment record and render the judgment that the trial court should have rendered. *See Myrad Props. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

We likewise review unambiguous agreements de novo. *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 449 (Tex. 2015). The parties' intent, as expressed in the language of their agreement, is controlling. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015). We consider the agreement's language as a whole, attempting to give effect to all of its provisions so that none are rendered meaningless. *See Apache Deepwater v. McDaniel Partners*, 485 S.W.3d 900, 906 (Tex. 2016). Thus, we read the agreement's words and phrases together and in context, not in isolation from one another. *Hysaw v. Dawkins*, 483 S.W.3d 1, 13 (Tex. 2016). Unless the agreement shows that the parties used a term in a technical or different sense, we give its provisions their plain, ordinary, and

4

generally accepted meaning. *Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017). The parties may not rely on extrinsic evidence to prove some meaning other than what their agreement states. *See First Bank v. Brumitt*, 519 S.W.3d 95, 109–10 (Tex. 2017). We may consider the circumstances surrounding the agreement's formation in ascertaining the common, ordinary meaning of its unambiguous language but we cannot look to surrounding circumstances to add to, alter, or contradict the agreement's terms. *Id.* at 110. We must enforce a valid, unambiguous agreement as the parties wrote it. *See El Paso Field Servs. v. MasTec N. Am.*, 389 S.W.3d 802, 810–11 (Tex. 2012). We cannot rewrite the parties' bargain in the guise of interpreting their agreement. *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016); *Gilbert Tex. Constr. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126–27 (Tex. 2010).

## B. Analysis

The addendum to the settlement agreement required the dissolved partnership's accountant to make "the customary partner-splits analysis" and specified that Richardson would "pay Stagg the 'Net Amount Due to [Stagg]'" generated by this partner-splits analysis. The addendum does not define the meaning of "'Net Amount Due to [Stagg].'" But the capitalization of the words, the enclosure of the phrase in quotation marks, and the use of brackets all indicate that the phrase "'Net Amount Due to [Stagg]'" is terminology borrowed directly from the partner-

5

splits analysis, which the addendum references as the basis for the calculation of the additional sum owed to Stagg. The partner-splits analysis, in turn, has a line entitled "Net Amount Due to Each Doctor" accompanied by a separate entry for Stagg in the amount of "34,773.64." The addendum's phrase "'Net Amount Due to [Stagg]'" therefore unambiguously refers to the partner-splits analysis's amount of "34,773.64." *See In re Deepwater Horizon*, 470 S.W.3d 452, 460 (Tex. 2015) (when contract refers to another document, court looks to the incorporated document to extent necessary to interpret the contract); *Ins. Co. of State of Penn. v. Roberts*, 506 S.W.3d 498, 504–05 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (same); *cf. Trico Mar. Servs. v. Stewart & Stevenson Tech. Servs.*, 73 S.W.3d 545, 548–51 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding) (contract did not plainly reference separate, unsigned paper containing arbitration clause and arbitration clause therefore was not incorporated by reference into contract).

Richardson does not dispute that the addendum must be read in conjunction with the partner-splits analysis. She contends, however, that the phrase "'Net Amount Due to [Stagg]'" unambiguously refers to Stagg's share of the "Available Cash to Each Doctor" specified in the partner-splits analysis rather than her share of the "Net Amount Due to Each Doctor." We reject Richardson's proposed interpretation because it disregards the addendum's use of capitalization, quotation marks, and brackets in the operative phrase and would improperly render these

6

features of the addendum's identifying language meaningless. Moreover, the phrase "Available Cash" does not appear in the parties' addendum.

Richardson argues that consideration of the settlement agreement and addendum as a whole demonstrates that the latter's "'Net Amount Due to [Stagg]'" must refer to "Available Cash" because Richardson purchased Stagg's partnership interest, which, she contends, encompasses the $25,000 that Richardson withheld from Stagg. But to adopt this interpretation, we would have to imply additional contractual terms that contradict the addendum's express language on this subject about the division of working capital during the post-termination period. The addendum does not say that Richardson shall pay Stagg the "'Net Amount Due to [Stagg]'" less the operating capital that customarily would have been retained by the now-dissolved partnership, and we cannot rewrite the addendum to do so. *See Fischer*, 479 S.W.3d at 239; *Gilbert Tex. Constr.*, 327 S.W.3d at 126–27; *see also WesternGeco, L.L.C. v. Input/Output, Inc.*, 246 S.W.3d 776, 783–84 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (trial court erred in implying term in settlement agreement that contradicted an express provision).

We hold that the plain language of the addendum to the parties' settlement agreement unambiguously required Richardson to pay Stagg the additional sum of $34,773.64 rather than the available cash of $9,773.64. Accordingly, the trial court

erred in denying Stagg's motion for summary judgment and granting Richardson's motion for summary judgment.

## CONCLUSION

We reverse the judgment of the trial court, render judgment that Stagg recover $25,000 from Richardson, and remand this cause to the trial court for the award of fees, costs, interest, and the entry of a final judgment consistent with this opinion.

Jane Bland
Justice

Panel consists of Justices Bland, Lloyd, and Caughey.