# IN THE SUPREME COURT OF TEXAS

══════════
No. 13-0639
══════════

STATE OFFICE OF RISK MANAGEMENT, APPELLANT

v.

CHRISTY CARTY, INDIVIDUALLY AND AS NEXT FRIEND FOR B.C., J.C. AND M.C.,
MINORS AND AS REPRESENTATIVE OF THE ESTATE OF JIMMY CARTY JR.,
DECEASED, APPELLEE

══════════════════════════════════════════
ON CERTIFIED QUESTIONS FROM THE
UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT
══════════════════════════════════════════

**Argued February 5, 2014**

JUSTICE LEHRMANN delivered the opinion of the Court.

When a workers' compensation beneficiary recovers from a third party for injuries compensable under the Texas Workers' Compensation Act (Act), the insurance carrier is entitled to be reimbursed from that recovery for benefits paid to the beneficiary and to treat any excess proceeds as an advance against future benefits owed. The U.S. Court of Appeals for the Fifth Circuit has certified the following three questions regarding the carrier's right to excess proceeds recovered by multiple beneficiaries:

> 1. In a case involving a recovery by multiple beneficiaries, how should the excess net settlement proceeds above the amount required to reimburse a workers' compensation carrier

for benefits paid be apportioned among the beneficiaries under section 417.002 of the Texas Labor Code?

2. How should a workers' compensation carrier's right under section 417.002 to treat a recovery as an advance of future benefits be calculated in a case involving multiple beneficiaries? Should the carrier's right be determined on a beneficiary-by-beneficiary basis or on a collective-recovery basis?

3. If the carrier's right to treat a recovery as an advance of future benefits should be determined on a beneficiary-by-beneficiary basis, does a beneficiary's nonbinding statement that she will use her recovery to benefit another beneficiary make the settlement allocation invalid?

Because our answer to Question 2 is dispositive, we answer it only. We hold that, when multiple beneficiaries recover compensation benefits through the same covered employee, the carrier's rights to a third-party settlement are determined by treating it as a single, collective recovery rather than separate recoveries by each beneficiary.

## I. Legal and Factual Background

Because the underlying case involves the extent of a workers' compensation carrier's right to reimbursement of death benefits paid and owed to a legal beneficiary, an overview of the Act's general provisions governing payment of death benefits is helpful in introducing the facts at hand.

## A. Summary of Workers' Compensation Death Benefits

Under the Act, "if a compensable injury to [an] employee results in death," the carrier is required to pay death benefits to the employee's legal beneficiary equal to 75% of the employee's average weekly salary. TEX. LAB. CODE § 408.181(a), (b). As is relevant to this case, if the employee is survived by an eligible spouse and one or more eligible children, half of the benefits are paid to the spouse and half to the children in equal shares. *Id.* § 408.182(a). The spouse is eligible

2

for benefits "for life or until remarriage." *Id.* § 408.183(b). Upon remarriage, the spouse is entitled to an additional 104 weeks of benefits, payable in a lump sum. *Id.*; 28 TEX. ADMIN. CODE § 132.7(b). Following the expiration of 104 weeks from the date of remarriage, the spouse's share of benefits is redistributed to the children. TEX. LAB. CODE § 408.184(b). Minor children are eligible for benefits until they reach the age of eighteen or, so long as they remain a full-time student, until the age of twenty-five. *Id.* § 408.183(c), (d).

## B. Facts

Jimmy Carty died in a training accident at the Texas Department of Public Safety Training Academy. He was survived by his wife, Christy, and their three minor children. State Office of Risk Management (SORM), the workers' compensation carrier for state employees, paid Jimmy's medical and funeral benefits[1] and began paying death benefits to Christy and the children.

Christy, individually, as representative of Jimmy's estate, and as next friend of the children, brought suit in federal court against Ringside, Inc., and Kim Pacific Martial Arts, asserting product liability claims and claims under the Texas wrongful death and survival statutes. While that suit was pending, Christy remarried and is thus no longer eligible for death benefits.

The Cartys settled with Ringside for $100,000, agreeing to pay SORM $20,000 from the settlement proceeds in partial satisfaction of SORM's reimbursement claim for benefits paid. The Cartys then settled with Kim Pacific for $800,000, and SORM intervened to assert its right to reimbursement from those funds. Following a hearing at which Christy testified that she intended

---

[1] An employee who sustains a compensable injury "is entitled to all health care reasonably required by the nature of the injury." TEX. LAB. CODE § 408.021(a). If the compensable injury results in the employee's death, the carrier must pay up to $6,000 in burial costs to the person who incurred liability for those costs. *Id.* § 408.186(a).

to use her portion of the settlement for the care and well-being of the children, the district court approved the settlement and apportioned it among the parties. The court determined that SORM's gross claim for benefits paid to date was $153,306.62, representing the amount SORM had paid in funeral and medical benefits, weekly death benefits to Christy and the children, and a lump sum payment to Christy for the remaining death benefits to which she was entitled following her remarriage. After reducing the gross amount by SORM's portion of the Ringside settlement and its share of the attorney's fees and expenses,[2] the trial court calculated SORM's net reimbursement as $78,295.55. The remainder of the settlement was apportioned $290,316.87 for attorney's fees and expenses,[3] $351,278.91 to Christy (individually and as representative of Jimmy's estate), and $80,108.67 to the children.

The district court also determined that the recovery that SORM was entitled to treat as an advance against future benefits owed to the children equaled their share of the settlement. In other words, as soon as the amount of suspended benefits equaled $80,108.67, SORM was required to resume payment to the children. The district court made the apportionment between Christy and the children based on the relative ratio of benefits they had already received. SORM challenged the apportionment on appeal.

---

[2] The Act requires a "carrier whose interest is not actively represented by an attorney in a third-party action" to pay a fee to the claimant's attorney in the agreed-upon amount or, absent an agreement, to pay "a reasonable fee for recovery of the insurance carrier's interest that may not exceed one-third of the insurance carrier's recovery," plus "a proportionate share of expenses." TEX. LAB. CODE § 417.003(a).

[3] Amicus Texas Mutual Insurance Company argues that the district court erred in calculating the attorney's fee on the gross settlement amount before deducting SORM's lien. The parties have not briefed this issue, which is well beyond the scope of the certified questions. Accordingly, we do not address it.

The Fifth Circuit disagreed with the district court's apportioning the settlement funds among Christy and the children "in the same ratio as they received death benefits," noting that this method was required by prior versions of the governing statute, but "was eliminated in the 1989 Act and is nowhere to be found in the current version of the Workers' Compensation Act." *Carty v. State Office of Risk Mgmt.*, 733 F.3d 550, 556 (5th Cir. 2013) (citing Act of Dec. 13, 1989, 71st Leg., 2d C.S., ch. 1, § 4.05(f) (amended 1993), and TEX. LAB. CODE § 417.002). The Fifth Circuit declined to elaborate on how the district court should have apportioned the settlement, concluding that "the current Texas statute does not clarify how a net recovery in excess of the amount of benefits paid by the workers' compensation carrier should be apportioned among beneficiaries when multiple beneficiaries recover from a third-party tortfeasor." *Id.* Accordingly, the Fifth Circuit certified, and we accepted, three questions seeking clarity on the issue. TEX. R. APP. P. 58.1.

## II. Discussion

We first address Question 2, which asks whether a workers' compensation carrier's statutory right to treat a third-party recovery as an advance against future benefits in a case involving multiple beneficiaries should be determined on a beneficiary-by-beneficiary basis or a collective-recovery basis.

### A. Interpretation Principles

As with any statute, in construing the Act our primary objective is to give effect to legislative intent. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). "The plain meaning of the text is the best expression of that intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v.*

5

*Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). We interpret statutory text by studying the language of the specific provision at issue, as well as the statute as a whole. *In re Office of Attorney Gen.*, 422 S.W.3d 623, 629 (Tex. 2013). Further, we "endeavor to read the statute contextually, giving effect to every word, clause, and sentence." *Id.*

### B. Workers' Compensation Carrier's Right to Third-Party Recovery by Multiple Beneficiaries

An employee who suffers a compensable injury under the Act may seek damages from a liable third party in addition to pursuing a claim for compensation benefits. TEX. LAB. CODE § 417.001(a). When an employee or beneficiary claims benefits, "the insurance carrier is subrogated to the rights of the injured employee [up to the total benefits paid or assumed] and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary." *Id.* § 417.001(b). The carrier is entitled to reimbursement from the third-party recovery under the following scheme:

> (a) The net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury.
>
> (b) Any amount recovered that exceeds the amount of the reimbursement required under Subsection (a) shall be treated as an advance against future benefits, including medical benefits, that the claimant is entitled to receive under this subtitle.
>
> (c) If the advance under Subsection (b) is adequate to cover all future benefits, the insurance carrier is not required to resume the payment of benefits. If the advance is insufficient, the insurance carrier shall resume the payment of benefits when the advance is exhausted.

*Id.* § 417.002.

Examining subsection 417.002(b), the Fifth Circuit essentially asks us how—if at all—the apportionment among multiple workers' compensation beneficiaries of a third-party recovery that exceeds net benefits already paid to them affects the amount the carrier may treat as an advance against future benefits. The parties propose different answers to this question stemming from their diverging interpretations of the word "claimant" in section 417.002, which the Act does not define. "Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

The Cartys argue that each beneficiary constitutes an individual "claimant" and that the carrier's right to treat the recovery as an advance against future benefits must therefore be determined, as the district court concluded, on a beneficiary-by-beneficiary basis. By contrast, SORM contends that an employee and all beneficiaries who collect benefits through that employee constitute a collective "claimant," such that the third-party settlement should be treated as a single recovery for purposes of the carrier's right to treat it as an advance against future benefits.

Suppose, for example, that X and Y are legal beneficiaries of the same employee and settle with a third party for $300,000 after attorney's fees and expenses are paid. Upon settlement, they have received $200,000 in death benefits ($100,000 each) and continue to be eligible for future benefits. The carrier is reimbursed $200,000 for the benefits already paid, leaving $100,000 to be allocated between X and Y, and to be treated as an advance against future benefits. Under the Cartys' interpretation of subsection 417.002(b), the district court should then apportion the remaining recovery to X and Y based on the relative merit and value of their claims. If we assume

7

this requires allocating $75,000 to X and $25,000 to Y, then the carrier would be required to resume benefit payments to X when the amount of the suspended payments to X reaches $75,000, and to resume payments to Y when the amount of suspended payments to Y reaches $25,000. Under SORM's interpretation, the carrier would resume payments when the total amount of suspended benefits reaches $100,000, irrespective of the third-party recovery's apportionment between X and Y. As explained below, we agree with SORM.

Section 417.002's statutory reimbursement scheme is designed to ensure that the carrier "gets the first money a worker receives from a tortfeasor," which "is crucial to the worker's compensation system because it reduces costs for carriers (and thus employers, and thus the public) and prevents double recovery by workers." *Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 35 (Tex. 2008). In *Ledbetter*, we summarized this so-called "first money" framework as follows:

- any net [third-party] recovery up to the amount of past benefits goes to the carrier;

- any recovery greater than past benefits but less than all future benefits goes to the beneficiary, but releases the carrier from future payments to that extent;

- any recovery greater than past or future benefits combined goes to the beneficiary.

*Id.* at 35–36 (citing TEX. LAB. CODE § 417.002).

Interpreting subsection 417.002(a) in *Ledbetter* in accordance with this framework, we recognized that "until a carrier is reimbursed in full, 'the employee or his representatives have no right to any of [the third-party recovery].'" *Id.* at 36 (quoting *Capitol Aggregates, Inc. v. Great Am. Ins. Co.*, 408 S.W.2d 922, 923 (Tex. 1966)). Thus, as the Fifth Circuit recognized, the "net amount

8

recovered by a claimant" referenced in subsection 417.002(a), from which the carrier must be reimbursed for benefits already paid, is the collective third-party recovery by the employee or his beneficiaries. *See Carty*, 733 F.3d at 555. That is, any allocation of the third-party recovery among the beneficiaries has no effect on the carrier's right to reimbursement for past benefits. In the Cartys' view, however, that allocation should have a significant effect on the carrier's rights with respect to future benefits.

As a result, the Cartys would have us treat future benefits differently from past benefits in terms of the carrier's reimbursement rights. However, neither the text nor the purpose of the Act supports that interpretation. Subsection (a) requires that the net amount recovered by "a claimant" be used to reimburse the carrier for paid benefits, while subsection (b) allows the carrier to treat any excess recovery as an advance against future benefits that "the claimant" is entitled to receive. TEX. LAB. CODE § 417.002(a), (b). "[T]he claimant" in subsection (b) necessarily references the same "claimant" introduced in subsection (a), *i.e.*, the employee or the beneficiaries recovering through that employee.

Importantly, this is consistent with the Act's recognition of the carrier's subrogation interest in section 417.001, which states in pertinent part:

> (b) If a benefit is claimed by an injured employee or a legal beneficiary of the employee, the insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary. The insurance carrier's subrogation interest is limited to the amount of the total benefits paid or assumed by the carrier to the employee or the legal beneficiary . . . . If the recovery is for an amount greater than the amount of the insurance carrier's subrogation interest, the insurance carrier shall:
>
> (1) reimburse itself and pay the costs from the amount recovered; and

9

(2) pay the remainder of the amount recovered to the injured employee or the legal beneficiary.

*Id.* § 417.001(b). Notably, the carrier is subrogated to the *employee's* rights, and its subrogation interest includes "the total benefits paid or assumed by the carrier to the employee or the legal beneficiary." *Id.* The Legislature made no distinction between past and future benefits in defining the carrier's subrogation interest, which instead is determined in relation to the amount of the total benefits owed with respect to a particular employee. *See id.* And that amount does not vary with the number of beneficiaries.

Because a beneficiary's right to death benefits and a carrier's right to reimbursement both flow through the covered employee, calculating the reimbursement right in relation to the total third-party recovery by a particular employee or his legal beneficiaries makes sense. *See Fort Worth Lloyds v. Haygood*, 246 S.W.2d 865, 870 (Tex. 1952) ("The first money paid rightfully should go to reimburse the carrier who has paid, *or assumed to pay*, [workers'] compensation to the employee." (emphasis added)). Stated another way, given that past benefits are undisputedly treated collectively under subsection 417.002(a), future benefits should be treated the same way under subsection 417.002(b).

The Cartys' interpretation, in addition to being unsupported by the text of sections 417.001 and 417.002, introduces uncertainty into the reimbursement determination that is inconsistent with the statute's primary purpose—ensuring carriers are fully reimbursed in order to decrease costs to the carrier (and, in turn, the public). *See Ledbetter*, 251 S.W.3d at 35–36. First, the inevitable disputes between beneficiaries and carriers over the proper apportionment of a third-party settlement

10

will increase the costs of all parties involved. More importantly, we agree with amicus Texas Mutual that the Cartys' interpretation allows the settlement's timing to affect how the proceeds are to be credited to the carrier. Nothing in the language of the Act supports such an arbitrary result.

The Cartys argue that treating excess settlement proceeds collectively is inconsistent with the way courts disburse third-party settlement funds recovered by both a beneficiary and a nonbeneficiary. For example, an employee who is married with children, and who suffers a compensable injury but is not killed, will be the only beneficiary of workers' compensation insurance, although his family may join in a third-party suit. *See* TEX. LAB. CODE §§ 408.021, 408.081, 408.101, 408.121, 408.142, 408.161 (describing medical and income benefits to which an employee who suffers a compensable injury is entitled); *see also Roberts v. Williamson*, 111 S.W.3d 113, 116 (Tex. 2003) (explaining that Texas law allows a child or spouse to seek damages for loss of consortium when a parent or spouse suffers a serious, permanent, and disabling injury). If that employee is killed, his spouse and children will be beneficiaries, but his parents may also participate in the third-party suit and recovery. *See* TEX. CIV. PRAC. & REM. CODE § 71.004 (providing that the surviving spouse, children, and parents of the deceased may bring a wrongful death action).

In situations like these, the settlement must be apportioned between the beneficiary and nonbeneficiary before determining the carrier's reimbursement rights. *See, e.g.*, *U.S. Fire Ins. Co. v. Hernandez*, 918 S.W.2d 576, 579 (Tex. App.—Corpus Christi 1996, writ denied). The courts of appeals are in agreement, and we concur, that a trial court may not render judgment apportioning the funds in a manner that "arbitrarily compromises the carrier's right to subrogation." *Id.*; *see also Ins. Co. of N. Am. v. Wright*, 886 S.W.2d 337, 342 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

11

Rather, the proper settlement division is a fact issue "based on the relative merits and worth of the claims involved." *Tex. Workers' Comp. Ins. Fund v. Serrano*, 985 S.W.2d 208, 210 (Tex. App.—Corpus Christi 1999, pet. denied). The Cartys essentially contend that the settlement division among multiple beneficiaries should work the same way.

However, this contention ignores the basis for requiring apportionment between beneficiaries and nonbeneficiaries. A carrier's subrogation interest extends only to the benefits paid to an employee or legal beneficiary. TEX. LAB. CODE § 417.001(b); *see also id.* § 417.002(a) (allowing carrier to seek reimbursement from third-party recovery by a "claimant"). The carrier therefore has no right to *any* portion of a third-party recovery that represents a nonbeneficiary's interest. *See Hernandez*, 918 S.W.2d at 579. Importantly, the carrier's rights do not depend on whether it is seeking reimbursement for benefits paid or a credit for future benefits owed, yet the Cartys assert the distinction is meaningful when multiple beneficiaries are involved.

The Cartys also posit a hypothetical in which two unrelated employees are injured in a motor vehicle accident while in the course and scope of their employment, receive workers' compensation benefits, and settle with the party driving the other vehicle. The Cartys note the unfairness of requiring one employee's recovery to potentially reimburse benefits paid or owed to the other. This hypothetical, however, presents a fundamentally different scenario from the one at issue. As discussed above, the term "claimant" in section 417.002 includes a covered employee and all beneficiaries entitled to recover benefits through that employee. In the hypothetical posed by the Cartys, each covered employee constitutes a separate claimant whose third-party recovery is subject to the carrier's reimbursement rights. Treating two unrelated employees collectively as a single

12

claimant does not comport with the Act's plain language. *See Employers Cas. Co. v. Henager*, 852 S.W.2d 655, 659 (Tex. App.—Dallas 1993, writ denied) (holding that, where two injured employees received workers' compensation benefits and resolved third-party claims in a single settlement, proceeds could not be allocated in a manner that compromised carrier's subrogation rights).

Finally, the Cartys rely on the well-settled principle that the Act should be construed liberally "in order to effectuate the purposes for which it was enacted." *In re Poly-America, L.P.*, 262 S.W.3d 337, 350 (Tex. 2008) (citation and internal quotation marks omitted). They contend that determining the carrier's right to treat a third-party recovery as an advance against future benefits on a collective-recovery basis ignores the statute's purpose of preventing double recovery while making the employee whole. *See Haygood*, 246 S.W.2d at 868. Apportioning the recovery among the beneficiaries based on the relative merit and value of their claims, the Cartys argue, better comports with that purpose. While the collective-recovery approach may not always best serve the purpose highlighted by the Cartys, it does serve to reduce carrier costs and is the approach that is most consistent with the statute's plain language. *See id.* (declining to construe the statute to restrict an employee's rights by implication when such restrictions are not found in the statute's plain language). Addressing the potential inequities that subsection 417.002(b) can generate is a policy decision for the Legislature, not the courts.[4]

---

[4] We note that such inequities may just as easily arise in the context of reimbursing a carrier for benefits already paid. Recall our hypothetical in which X and Y are legal beneficiaries of the same employee and have received $200,000 in benefits ($100,000 each) at the time they settle with a third party, this time for $200,000 after payment of attorney's fees and expenses. Further suppose that an allocation of that settlement to the beneficiaries based on the relative merit and value of their claims would yield $120,000 to X and $80,000 to Y. Under subsection 417.002(a), the carrier is entitled to be reimbursed from the full $200,000 recovery before any such allocation is made. In this scenario, X's share of the recovery is used to reimburse the carrier for benefits paid to Y, yet all agree that the carrier in this scenario is entitled to the entire recovery. *Ledbetter*, 251 S.W.3d at 36.

13

In sum, chapter 417 of the Act entitles the compensation carrier to "the first money a worker receives from a tortfeasor." *Ledbetter*, 251 S.W.3d at 35. This "first money" rule extends to benefits the carrier has paid or assumed to pay. *Haygood*, 246 S.W.2d at 870. Treating benefits owed differently from benefits paid when multiple beneficiaries are involved is not supported by the statute's text and undermines the goal of reducing carrier costs. Accordingly, we answer Question 2 in the following manner: a carrier's right to treat a third-party recovery as an advance against future benefits in a case involving multiple beneficiaries of the same covered employee should be determined on a collective-recovery basis.

### C. The Remaining Questions

Question 1 asks: In a case involving a recovery by multiple beneficiaries, how should the excess net settlement proceeds above the amount required to reimburse a workers' compensation carrier for benefits paid be apportioned among the beneficiaries under section 417.002 of the Texas Labor Code? This question is rendered moot by our answer to Question 2 because apportioning excess proceeds among the beneficiaries does not affect the carrier's right to treat those proceeds as an advance against future benefits.

Question 3 asks whether a beneficiary's nonbinding statement that she will use her recovery to benefit another beneficiary makes the settlement allocation invalid. The question is expressly conditioned on our answering Question 2 to hold that the carrier's right to treat a recovery as an advance of future benefits should be determined on a beneficiary-by-beneficiary basis. Because we do not so hold, Question 3 is also moot.

14

### III. Conclusion

Consistent with the text and purpose of the reimbursement scheme under the Texas Workers' Compensation Act, a workers' compensation carrier's right under section 417.002 to treat a third-party recovery as an advance of future benefits in a case involving multiple beneficiaries of the same covered employee should be determined on a collective-recovery basis. Stated another way, the well-settled rule that a carrier is entitled to the "first money" received by an employee or his beneficiaries applies equally to past benefits paid and future benefits owed. As a result, we need not address any inquiries regarding the proper apportionment method of a third-party recovery among multiple beneficiaries. We answer the certified questions accordingly.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 20, 2014

15