**WAUSAU UNDERWRITERS INSURANCE COMPANY, Appellant,**

v.

**James WEDEL and Michelle Wedel, Appellees.**

No. 08–16–00120–CV

Court of Appeals of Texas, El Paso.

April 26, 2017

David L. Plaut, Hanna & Plaut, LLP, Austin, TX, for Appellant.

G. Alan Waldrop, Terrill & Waldrop, Austin, TX, for Appellees.

Before McClure, C.J., Rodriguez, and Palafox, JJ.

## OPINION

GINA M. PALAFOX, Justice

In this appeal, we interpret a worker's compensation policy that includes an endorsement waiving subrogation rights. Appellant, the compensation carrier of the policy, asserts that the trial court erred in granting summary judgment in favor of James Wedel, an injured worker who filed a suit for declaratory judgment against the carrier. The carrier contends that the policy endorsement that waives subrogation rights from a liable third-party, as listed on a schedule, does not apply to the injured worker himself. The carrier claims it remains entitled to reimbursement from the worker and seeks recovery of benefits it paid from settlement proceeds the injured worker recovered from a liable third-party listed in the endorsement. The carrier additionally raises a choice of law issue. We affirm the trial court's judgment. Tex. R. App. P. 43.2(a).

## BACKGROUND

### Relevant Contract and Insurance Provisions

Western Refining Company, L.P., maintains and operates asphalt terminals at various locations from which asphalt may be loaded into transport trucks that are owned or operated by others. Western executed an asphalt terminal access agreement (the contract) with Cactus Transport, Inc., granting Cactus access to Western's asphalt terminals for purposes of loading asphalt into Cactus' trucks for the benefit of customers of Western, or Western's exchange partners, or for Cactus' own benefit as a customer of Western. In the contract, Western required and Cactus agreed that Cactus would obtain workers' compensation insurance coverage with a waiver of subrogation rights favorable to Western and its affiliated entities. Specifically, the Western contract required that the compensation policy must "be ENDORSED to contain a waiver of subrogation against the WESTERN ENTITIES," which refers to "WESTERN, its parent, subsidiary and affiliated companies, and their respective officers, agents and employees[.]"

Complying with the Western contract, Cactus purchased and Wausau Business Insurance Company (Wausau) issued a worker's compensation policy to Cactus. The policy contains a provision entitled, "Recovery From Others," which declares,

"We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury." As required by the Western contract, however, Cactus purchased and Wausau included a "WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT," for an additional premium, which provides:

> We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule. This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.
> This agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.
>
> Schedule
>
> ANY PERSON OR ORGANIZATION REQUIRED BY WRITTEN CONTRACT.
> STATE OF ARIZONA:
> THE PREMIUM CHARGE FOR THIS ENDORSEMENT SHALL BE 5% OF THE PREMIUM DEVELOPED IN CONJUNCTION WITH WORK PERFORMED FOR THE ABOVE PERSONS OR ORGANIZATIONS SUBJECT TO A MINIMUM PREMIUM OF $250 PER PERSON, ORGANIZATION OR JOB.

### Cactus' Employee is Injured at Western's Asphalt Terminal

Cactus employed Appellee James Wedel, an Arizona resident, as a commercial driver working out of its Arizona office. On October 15, 2012, Wedel fell and sustained brain and spinal cord injuries while attempting to load asphalt at Western's facility in El Paso, Texas. Wedel suffered paraplegia as well as profound cognitive defects sustained by his work injury.[1] Pursuant to Cactus' workers' compensation policy, Wausau asserted that it paid Wedel approximately $1,548,822 in compensation benefits as of August 12, 2015.

### The Lawsuit

On September 11, 2013, Wedel and his wife, Michelle, sued Western seeking damages arising from Western's alleged third-party negligence and gross negligence. On December 3, 2013, Wausau intervened in the third-party suit asserting its subrogation rights for past medical expenses and indemnity payments, as well as future medical and indemnity payments it may be required to pay due to Wedel's covered injury. In response, Western asserted that Wausau had no right of subrogation or right of recovery against Western pursuant to the terms of Western's contract with Cactus and the express waiver of subrogation endorsement included in the worker's compensation insurance policy. On September 12, 2014, Wausau non-suited its intervention in the third-party suit pending against Western.

The Wedels thereafter proceeded to mediation with Western based on their understanding that Wausau had non-suited its subrogation claim under the waiver of subrogation endorsement in the policy. Entering settlement negotiations, the Wedels contacted Wausau to confirm that it had waived its subrogation interest. In response, a representative of Wausau's parent company, Liberty Mutual, responded by email, stating:

> Liberty does indeed assert its recovery rights under the Texas' workers' compensation statutory scheme against any and all amount[s] recovered by employ-

---

1. Mr. Wedel died several months before this case was submitted to the Court.

ee, James Wedel. The contract you reference ... states that the policy is to "contain a waiver of subrogation against the Western Entities.["] Liberty is not subrogating against any third party entity, clearly not a Western Entity, and only asserting statutory recovery rights against Mr. Wedel's settlement and/or award.

Seeking a quick resolution of their claim, the Wedels settled with Western contingent on a later resolution of Wausau's subrogation claim.

Thereafter, the Wedels amended their petition naming Wausau as a party defendant and sought entry of a final judgment declaring that Wausau had waived its right of subrogation against any proceeds recoverable from Western in their personal injury lawsuit. Based on the waiver contained in the policy, the Wedels asserted that Wausau had no right to reimbursement against any proceeds paid to the Wedels arising from their third-party suit against Western. On July 14, 2015, the trial court set the hearing on the entry of a final judgment for August 27, 2015. Wausau filed a plea to the jurisdiction and moved to be dismissed as a party defendant.

The Wedels then sought traditional summary judgment on the issue of whether Wausau had waived its rights to subrogation and reimbursement. The Wedels tendered as evidence the contract between Cactus and Western, Wausau's policy and waiver endorsement, and Liberty Mutual's email. In response, Wausau asserted that Texas choice of law rules applied to the case, and that Arizona law applied to the question of whether Wausau had waived its right to recover under its policy. Wausau argued that its waiver endorsement waived "subrogation only" as to Western,

and did not apply to reimbursements it may recover from Wedel, who is not named in the waiver endorsement Schedule.

In reply, the Wedels countered that the contract between Cactus and Western specified that the terms of the contract "shall be 'governed by the laws of the State of Texas,'" and countered that no choice of law decision was required because no conflict exists between the laws of Texas and Arizona, and that Texas law applied in the event a conflict was found to exist. Citing *Liberty Ins. Corp. v. SM Energy*, CIV.A. H-12-3092, 2012 WL 6100303, at *3, *5 (S.D. Tex. Dec. 7, 2012), the Wedels argued that cases interpreting similar subrogation waivers had held that a subrogation waiver applies to an injured employee. *See SM Energy*, 2012 WL 6100303, at *5. They also asserted that another Texas case specifically held that a waiver of subrogation need not name all employees of an employer when a carrier waives its subrogation rights in favor of a company that contracts with the injured worker's employer.[2]

After hearing Wausau's plea to the jurisdiction and the Wedels' traditional motion for summary judgment, the trial court denied Wausau's plea and motion to dismiss, granted summary judgment in favor of the Wedels, and found that Wausau had waived its right to "subrogate/reimbursement[.]" After the trial court considered Wausau's motion for reconsideration, the Wedels nonsuited with prejudice their claims against Western, but specified that the nonsuit was "not intended to, nor [did] it, affect or apply to any claims ... against Wausau[.]"

**2.** In support of this contention, the Wedels cite *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Pennzoil Co.*, 866 S.W.2d 248, 252 (Tex. App.–Corpus Christi 1993, no writ). However, we do not agree that the Wedels' assertion comports with the holding in that case.

The trial court entered final judgment declaring that Wausau had no right to or claim for "subrogation and/or reimbursement" regarding the Wedels' claim, nor was Wausau entitled to any portion of the funds recovered by the Wedels in their suit against Western, and ordered that Wausau take nothing from the Wedels on its reimbursement claim. This appeal follows.

### Issues

On appeal, Wausau presents two issues. In Issue One, Wausau contends the trial court erred in granting summary judgment because the waiver endorsement did not extinguish its statutory right of reimbursement from Wedel's third-party recovery. In support of this assertion, Wausau argues that rights of subrogation and of reimbursement are distinctly different. Wausau asserts that the waiver endorsement included in its worker's compensation policy waived its right of subrogation only against Western as required by the contract between Western and Cactus. Wausau asserts that it retains its right of reimbursement from the injured worker and this right encompasses recovery of past benefits paid as well as a credit against future benefits. In Issue Two, Wausau asserts that no choice of law decision is necessary.

### DISCUSSION

#### Standard of Review

We review a trial court's grant of summary judgment *de novo. Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017), *citing Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641 (Tex. 2015), *citing State v. Ninety Thousand Two Hundred Thirty–Five Dollars & No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 292 (Tex. 2013); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A party moving for traditional summary judgment has the burden to prove that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Lopez*, 465 S.W.3d at 641; *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review summary judgment evidence "in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Fielding*, 289 S.W.3d at 848, *citing City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

#### Applicable Law

Under Section 417.001 of the Act, an employee who suffers a compensable injury may seek damages from a liable third party in addition to pursuing a claim for compensation benefits. Tex. Lab. Code Ann. § 417.001(a)(West 2015); *State Office of Risk Mgmt. v. Carty*, 436 S.W.3d 298, 302 (Tex. 2014). When an employee or beneficiary (claimant) claims benefits, "the insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary." Tex. Lab. Code Ann. § 417.001(b)(West 2015); *Carty*, 436 S.W.3d at 302. Thus, the carrier is subrogated to the employee's rights, and the carrier's subrogation interest includes the total benefits paid or assumed by the carrier to the employee or the legal beneficiary. Tex. Lab. Code Ann. § 417.001(b)(West 2015); *Carty*, 436 S.W.3d at 304.

Under Section 417.002, the net amount recovered by a claimant in a third-party action shall be used to reimburse the in-

surance carrier for benefits, including medical benefits, that have been paid for the compensable injury. TEX. LAB. CODE ANN. § 417.002(a)(West 2015); *Carty*, 436 S.W.3d at 302. Amounts recovered in excess of the amount of the reimbursement required under Section 417.002(a) are treated as an advance against future benefits, including medical benefits, that the claimant is entitled to receive. TEX. LAB. CODE ANN. § 417.002(a-b)(West 2015); *Carty*, 436 S.W.3d at 302. If the advance is adequate to cover all future benefits, the insurance carrier is not required to resume the payment of benefits, but if the advance is insufficient, the insurance carrier shall resume the payment of benefits when the advance is exhausted. TEX. LAB. CODE ANN. § 417.002(c)(West 2015); *Carty*, 436 S.W.3d at 302.

 In interpreting these provisions, the Texas Supreme Court has concluded that the first money recovered by an injured worker from a tortfeasor generally must go to the workers' compensation carrier, and until the insurance carrier "is paid in full[,] the employee or his representatives have no right to any funds." *Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 33 n.1, 35 n.10 (Tex. 2008), *quoting Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 530 (Tex. 2002) *and citing Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 (Tex. 2007)(Act embraces "insurer's first-money right of subrogation"). The insurance carrier's right to reimbursement is mandatory. *Ledbetter*, 251 S.W.3d at 35. Despite these provisions, however, the statutory scheme may be waived or altered by the parties by contract. *New Hampshire Ins. Co. v. Mora*, 500 S.W.3d 132, 137 (Tex. App.–Houston [1st Dist.] 2016, pet. denied)(citation omitted).

*Waiver of Subrogation Analysis*

Advancing several arguments, Wausau asks that we determine whether the waiver endorsement in its policy waives its "statutory right of reimbursement" from the Wedels, after they obtain a recovery from Western as a third-party tortfeasor. We conclude that the waiver endorsement in favor of Western encompasses a waiver of Wausau's subrogation interest in any third-party recovery the Wedels obtain from Western.

## I. Subrogation Encompasses Reimbursement

Wausau contends that statutory rights of subrogation and reimbursement are distinct and independent rights. We disagree with this contention.

 In addressing a carrier's subrogation interest, courts have routinely construed Sections 417.001 and 417.002 of the Texas Labor Code together rather than independently. *See Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 530–31 (Tex. 2002); *SM Energy*, 2012 WL 6100303, at *8 (courts applying Texas law do not distinguish between carrier's subrogation and reimbursement rights in Workers' Compensation Act context, but refer to both Sections 417.002(a) and 417.001(b) in context of "subrogation" rights); *Am. Risk Funding Ins. Co. ex rel. Cont'l Cas. Co. v. Lambert*, 59 S.W.3d 254, 259 (Tex. App.–Corpus Christi 2001, pet. denied)("A waiver of the carrier's subrogation rights waives its right to reimbursement and its right to future credits."), *citing Hartford Acc. & Indem. Co. v. Buckland*, 882 S.W.2d 440, 445 (Tex. App.–Dallas 1994, writ denied) [3]; *Leyva v. Ace American Ins. Co.*, 330 S.W.3d 6, 9 (Tex. App.–El

---

**3.** *See* Act of May 15, 1973, 63rd Leg., R.S., ch. 88, sec. 10, 1973 Tex.Gen.Laws 187, 193, *repealed by* Act of Dec. 13, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(10), 1989 Tex.Gen. Laws 1, 114.

Paso 2010, pet. denied)(cases construing or referencing Sections 417.001 and 417.002 of the Act, or its predecessor statutory provisions, together). That a single right of subrogation exists which encompasses a right to reimbursement for past payments and credits against future benefits is made evident by prior cases in which courts have interpreted contractual waivers of subrogation under the Act and have determined that a policy's waiver of subrogation includes a waiver of a carrier's right to reimbursement for past payments as well as future credits. *See Lambert*, 59 S.W.3d at 259 (waiver of carrier's right of subrogation also waives its rights to reimbursement and future credits), *citing Buckland*, 882 S.W.2d at 445 (under statutory provisions, now encompassed by Sections 417.001 through 417.003, carrier's subrogation interest included right to reimbursement as well as its right to future amounts for which it was relieved of liability) [4]; *SM Energy*, 2013 WL 150713, at *3 (recognizing, "Although the Texas Supreme Court has not yet ruled on this issue, at least two Texas intermediate appellate courts have held [in *Lambert* and *Buckland*] that, under the [Act], a waiver of subrogation waives the right to a credit against future benefits."); *see also Lumbermens Mut. Cas. Co. v. Carter*, 934 S.W.2d 912, 913 (Tex. App.–Beaumont 1996, no writ)(affirming trial court's declaratory judgment denying insurance carrier any subrogation, lien, or reimbursement from or against any recovery of money by injured employee because some evidence supported trial court's conclusion that policy's inaptly-identified insurance carrier had waived right to subrogation and was estopped from asserting any claim for reimbursement in third-party case). Consequently, we disagree with Wausau's more restric-

tive assertion that a right of reimbursement is a distinct right encompassing recovery of benefits paid and a credit against future benefits. Rather, in construing Sections 417.001 and 417.002, we observe that an insurance carrier's right of subrogation encompasses the right of reimbursement, and consequently encompasses the right to recover for benefits paid and to a credit against future benefits.

Because Wausau challenges the Wedels' reliance on *Buckland*, a case on which Texas and Federal courts have subsequently relied in construing similar waiver endorsements, we examine it here. In *Buckland*, the insurance carrier issued a worker's compensation policy to an engineering and construction company, the employer, wherein the carrier agreed to pay worker's compensation benefits to the employer's employees. *Hartford Acc. & Indem. Co. v. Buckland*, 882 S.W.2d 440, 441 (Tex. App.–Dallas 1994, writ denied). In its policy, the insurance carrier agreed:

> We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by a written contract to obtain this waiver from us.
>
> This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.
>
> The premium for this endorsement is shown in the Schedule.
>
> SCHEDULE
> 1. ( ) Specific Waiver
> Name of person or organization
> 2. (X) Blanket Waiver

---

4. *See* Act of May 15, 1973, 63rd Leg., R.S., ch. 88, § 10, 1973 Tex.Gen.Laws 193, *repealed by* Act of Dec. 13, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(10), 1989 Tex.Gen.Laws 1, 114.

Any person or organization for whom the Named Insured has agreed by written contract to furnish this waiver.

*Buckland*, 882 S.W.2d at 441.

The employer later contracted to provide construction services for a petroleum company, and the contract between those parties provided that the petroleum company was entitled to the waiver of the insurance carrier's subrogation rights. *Buckland*, 882 S.W.2d at 441. Buckland worked for the employer and was injured during the period of the construction contract. *Id.* After the insurance carrier paid benefits to Buckland, Buckland filed a third-party suit against the petroleum company, and the insurance carrier intervened. *Id.* at 442. Buckland joined an additional defendant, and then settled his case against all defendants. *Id.* Ultimately, in its final judgment the trial court ordered that the insurance carrier was not entitled to subrogation because it had waived its subrogation rights against the petroleum company and the additional defendant, nor was it entitled to a future credit because the waiver of subrogation also waived the right to future credits. *Id.* at 442, 443–44.

On appeal, the parties agreed the policy's waiver endorsement had waived the insurance carrier's right of subrogation, and the Dallas court considered the issue of whether the waiver also waived the carrier's right to an advance against future benefits. *Buckland*, 882 S.W.2d at 445. The carrier argued that section 6a of article 8307 conferred two separate rights of subrogation and reimbursement, and that its contractual waiver of its right to recover payment from a third-party did not preclude it from claiming a credit for future compensation against the settlement amount which exceeded the amounts previously paid to Buckland. *See* Act of May 15, 1973, 63rd Leg., R.S., ch. 88, § 10, 1973 Tex.Gen.Laws 187, 193, *repealed by* Act of Dec. 13, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(10), 1989 Tex.Gen.Laws 1, 114; *Buckland*, 882 S.W.2d at 444. In support of its distinct—rights assertion, the carrier relied on article 8307, section 6a(c), which provided:

(c) If at the conclusion of a third party action a workmen's compensation beneficiary is entitled to compensation, the net amount recovered by such beneficiary from the third party action shall be applied to reimburse the association for past benefits and medical expenses paid and any amount in excess of past benefits and medical expenses shall be treated as an advance against future benefit payments of compensation to which the beneficiary is entitled to receive under the Act. When the advance is adequate to cover all future benefit payments of compensation and medical benefit payments as provided by this law, no further payments shall be made by the association but if insufficient, the association shall resume such payments when the advance is exhausted.

*See* Act of May 15, 1973, 63rd Leg., R.S., ch. 88, § 10, 1973 Tex.Gen.Laws 187, 193, *repealed by* Act of Dec. 13, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(10), 1989 Tex.Gen. Laws 1, 114; *Buckland*, 882 S.W.2d at 444.

In resolving the issue, the Dallas Court of Appeals examined the nature of the carrier's subrogation interest under article 8307, section 6a, and determined that "a carrier's subrogation interest *includes* its right to reimbursement as well as its right to future amounts[.]" *Buckland*, 882 S.W.2d at 445 (emphasis added). The Court determined the carrier's waiver of subrogation rights acted to bar its right to recover reimbursement and future credits, and concluded the trial court did not err in granting summary judgment in favor of the injured employee, Buckland. *Id.*

Wausau contends *Buckland* is not good authority because it was decided prior to the current version of the Act, which Wausau contends "created [a right of reimbursement under Section 417.001] ... separate from the right of subrogation [under Section 417.002]."

At the time it handed down its *Buckland* opinion in 1994, the Dallas Court of Appeals acknowledged that it was interpreting the issue before it under the repealed provisions of article 8307, section 6a because the injury had occurred prior to January 1, 1991, and the Court expressly recognized that the Texas Legislature had subsequently codified the statutory provisions under its consideration in Sections 417.001–417.003 of the Texas Labor Code.[5] *Buckland*, 882 S.W.2d at 441 n.1 ("*See* Act of May 15, 1973, 63rd Leg., R.S., ch. 88, § 10, 1973 Tex.Gen.Laws 193, *repealed by* Act of Dec. 13, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01[ (10) ], 1989 Tex.Gen.Laws 114 (current version at Tex. Lab. Code Ann. §§ 417.001–.003(Vernon Pamph. 1994) ).").

Wausau also contends the *Buckland* Court ruled on the matter of future benefits without addressing or ruling on the meaning of the waiver because the carrier in that case had conceded that the waiver applied to its right of reimbursement against the injured employee. Although *Buckland* acknowledges that the insurance carrier conceded application of the waiver to the carrier's right of reimbursement, we cannot agree that the Court failed to consider the waiver endorsement in its analysis. The Dallas Court of Appeals set out the language of the waiver endorsement at length within its opinion along with the relevant statutory language. *Buckland*, 882 S.W.2d at 441, 444. The Court noted that the insurance carrier, in support of its contention that the trial court had erred in concluding that it was not entitled to a credit for future benefit payments from the settlement of one defendant, had relied on the then-existing statutory provisions as well as the contractual waiver in the policy issued to Buckland's employer. *Buckland*, 882 S.W.2d at 444. The Court also declared, "The policy provides that [the carrier] waives its right to recover payments from third parties liable for any injury covered by the policy," acknowledged that the parties were in agreement that the contractual waiver waived the carrier's statutory subrogation rights, and proceeded to address whether such waiver encompassed an advance against future benefits. *Buckland*, 882 S.W.2d at 445. The Court concluded the waiver did encompass the carrier's right to future credits because, under the statutory provisions of article 8307, section 6a, "a carrier's subrogation interest includes its right to reimbursement as well as its right to future amounts for which it is relieved of liability." *Buckland*, 882 S.W.2d at 445 (citations omitted). The Texas Supreme Court denied application for writ of error in the case.

## II. Subrogation and Reimbursement in Statutory Worker's Compensation Scheme

Appellant next urges us to consider the importance of subrogation and reimburse-

---

**5.** Although not noted in *Buckland*, the Legislature also enacted article 8308 of the Texas Civil Statutes in 1989. *See* Act of Dec. 13, 1989, 71st Leg., 2nd C.S., ch. 1, sec. 4.05, 1989 Tex. Gen. Laws 1, 33. Section 4.05 of article 8308 addressed third-party liability under the Act. *See* Act of Dec. 13, 1989, 71st Leg., 2nd C.S., ch. 1, sec. 4.05, 1989 Tex. Gen. Laws 1, 33, repealed by Act of May 22, 1993, 73rd Leg., R.S., ch. 269, § 5(2), 1993 Tex. Gen. Laws. 987, 1273. In *Franks v. Sematech, Inc.*, 936 S.W.2d 959, 960 n.1 (Tex. 1997), the Texas Supreme Court acknowledged that Section 417.001 was the subsequent, non-substantive recodification of article 8308, section 4.05.

ment rights under the Act, refers us to Sections 417.001 and 417.002 and cases we have cited herein which embrace an insurer's mandatory right to first-money reimbursement, and argues that "trial courts cannot invoke equitable powers to deny the carrier subrogation or reimbursement on terms inconsistent with the statute." TEX. LAB. CODE ANN. §§ 417.001, 417.002 (West 2015); *see Carty*, 436 S.W.3d at 302; *Ledbetter*, 251 S.W.3d at 33 n.1, 35 n.10; *Baker*, 87 S.W.3d at 530; *and citing Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 (Tex. 2007)(Act embraces "insurer's first-money right of subrogation"). Contrary to Wausau's contention here, the denial of subrogation, and consequently reimbursement, results not from the trial court's invocation of equitable powers but, rather, from Wausau's contractual waiver sold to Cactus as an endorsement of its policy. There is no dispute that in the absence of a waiver of subrogation, the Act provides for the insurance carrier's mandatory right to first-money reimbursement and credits against future benefits, but as we have noted, a right of subrogation may be waived, and when an insurance carrier waives subrogation in a third-party action, Texas and Federal courts interpreting the Act have found waivers of subrogation to subsume the waiver of the right to reimbursement of past payments and future credits. *See SM Energy*, 2012 WL 6100303, at *7 (recognizing cases holding policy's statement, that insurer would not "enforce our right against the persons or organization named in the Schedule," included waiver of any right to seek reimbursement or setoff from payments to injured employee as to any money paid by or on behalf of an organization listed in the Schedule); *see, e.g., Lambert*, 59 S.W.3d at 259; *Carter*, 934 S.W.2d at 913; *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Pennzoil Co.*, 866 S.W.2d 248, 251–52 (Tex. App.–Corpus Christi 1993, no writ); *Trejo v. Alter Scrap Metal, Inc.*, 2010 WL 2773397, at *1, *10 (S.D.Miss. July 13, 2010).

## III. Waiver of Subrogation Against a Third Party Responsible for an Employee's Injury

Wausau contends that its waiver endorsement must be construed narrowly such that it bars subrogation from Western and its affiliates only, and thereby, permits a reimbursement from the Wedels directly. We remain unpersuaded.

### Interpretation Principles

 In construing the Act, our primary objective is to give effect to legislative intent. *Carty*, 436 S.W.3d at 302, *citing Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). Unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results, the plain meaning of the statutory text is the best expression of legislative intent. *Carty*, 436 S.W.3d at 302, *citing Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). We interpret statutory text by studying the language of the specific provision at issue, as well as the statute as a whole. *In re Office of Attorney Gen.*, 422 S.W.3d 623, 629 (Tex. 2013). We also "endeavor to read the statute contextually, giving effect to every word, clause, and sentence." *Id.*

 When interpreting an insurance policy, we follow the "general rules of contract construction to ascertain the parties' intent." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010); *Mora*, 500 S.W.3d at 137. Because we presume the parties intend what the words of their contract says, we first examine the language of the policy itself. *Gilbert Tex. Constr., L.P.*, 327 S.W.3d at 126.

Unless the policy indicates that the parties intended the language to impart a technical or different meaning, we give the words in the policy their ordinary and generally accepted meaning. *See Nassar*, 508 S.W.3d at 258; *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015), *citing Gilbert Tex. Constr., L.P.*, 327 S.W.3d at 126 ("Unless the policy dictates otherwise, we give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage."); *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015), *citing Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158 (Tex. 2003). We must examine the policy as a whole, seeking to harmonize all provisions and render none meaningless. *Nassar*, 508 S.W.3d at 258, *citing Gilbert Tex. Constr., L.P.*, 327 S.W.3d at 126. We will construe as a matter of law and enforce as written an insurance contract which uses unambiguous language. *In re Deepwater Horizon*, 470 S.W.3d at 464, *citing State Farm Lloyds v. Page*, 315 S.W.3d 525, 527–28 (Tex. 2010).

### Contract and Blanket Waiver

In this case, we must construe the body of the policy and the additional endorsement purchased by Cactus as required by the transport agreement with Western. The policy provides that Wausau has the right to recover its payments from anyone liable for an injury covered by the policy but it also contains a blanket waiver of subrogation providing that Wausau "will not enforce [its] right against [any person or organization required by written contract]." The endorsement expressly states, "[t]his agreement applies only to the extent that [Cactus] perform[s] work under a written contract that requires [Cactus] to obtain this agreement from us[,]" and also specifies that the agreement "shall not operate directly or indirectly to benefit any-one not named in the Schedule." Additionally, it sets out the premium required of Cactus for purchase of the waiver of subrogation. Clearly, the endorsement requires an underlying written agreement to confer a waiver of subrogation.

In this case, Section 3(b) of the contract between Cactus and Western provides, "The [workers' compensation] insurance specified in Section 3(a) of this [agreement] . . . shall be ENDORSED to contain a waiver of subrogation against the WESTERN ENTITIES," which are defined therein as "WESTERN, its parent, subsidiary and affiliated companies, and their respective officers, agents and employees[.]" Wausau contends the term "subrogation" as used in the contract between Cactus and Western is limited to Wausau's right to subrogate directly against Western and its affiliates, and notes that the contract does not expressly address Wausau's rights against Cactus' injured employees as beneficiaries of the policy.

The insurance provisions in the contract between Cactus and Western required that Cactus provide worker's compensation insurance endorsed to contain a waiver of subrogation against Western, as well as its parent, subsidiary, and affiliated companies, and their respective officers, agents, and employees. Therefore, as Western is encompassed within the contract's waiver of subrogation requirement, Wausau's policy's waiver endorsement undoubtedly applies to Western.

Wausau proclaims the waiver endorsement is unambiguous and applies only to parties liable for Wedel's injury. Moreover, it argues that the waiver is inapplicable to Wedel because Wedel is not a person liable for his own injuries, and in seeking to recover from Wedel, Wausau is not seeking to recover reimbursement from anyone

"liable" for Wedel's injuries. According to Wausau, the waiver endorsement only waives the right to sue a liable tortfeasor who is a party to the contract requiring the waiver, and because Wedel is not a party to the contract, it contends the endorsement does not bar Wausau's recovery against Wedel. Because the waiver endorsement provides that it "shall not operate directly or indirectly to benefit anyone not named in the Schedule," and because Wedel is not named in the schedule, Wausau concludes the waiver endorsement was not intended to benefit Wedel, and does not apply to bar its statutory right to reimbursement against Wedel's third-party recovery as a matter of law. In sum, we are asked to conclude that the policy otherwise allows Wausau to recover those same benefit payments directly from Wedel, the injured worker, that it concedes it cannot recover from Western, the liable third-party.

 When construing an insurance policy, we are mindful of how other courts interpret policy language identical or extremely similar to policy language at issue in the case presented. *The Lynd Co.*, 466 S.W.3d at 118, *citing Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 824 (Tex. 1997). We typically endeavor to uniformly construe insurance provisions, "especially where ... the contract provisions at issue are identical across the jurisdictions." *The Lynd Co.*, 466 S.W.3d at 118, *quoting Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 522 (Tex. 1995); *see also Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 496–97 (Tex. 2008); *Cowan*, 945 S.W.2d at 824.

Regarding the application of the waiver to reimbursement against injured employee Wedel, we find guidance in *Am. Risk Funding Ins. Co. ex rel. Cont'l Cas. Co. v. Lambert*, 59 S.W.3d 254, 259 (Tex. App.–

Corpus Christi 2001, pet. denied). In *Lambert*, as here, employees filed suit against third parties for personal injuries sustained during a construction project, and in anticipation that the defendants would be held liable, the workers' compensation carrier intervened seeking reimbursement of benefits it had paid to the injured workers. *Lambert*, 59 S.W.3d at 256. The injured workers settled with defendants and denied the carrier's subrogation claim because the carrier had previously agreed and had contracted with the injured workers' employer to waive its subrogation rights. *Lambert*, 59 S.W.3d at 256. The trial court granted the injured employees' motion for summary judgment against the worker's compensation carrier. *Lambert*, 59 S.W.3d at 256.

Wausau correctly notes that the *Lambert* court did not discuss the specific language of the waiver provisions in its opinion. Regardless, we find *Lambert*'s reasoning instructive. In overruling the carrier's claim that the waiver of subrogation was not intended to benefit the injured employees, the *Lambert* Court explained:

> The employees' cause of action against the third party is burdened by the subrogation rights of the carrier. The third party having the benefit of the waiver is free to negotiate a settlement with the injured employee without having to pay additional to the employee to cover any subrogation of compensation of workers' compensation benefits. The companies named in the waiver would benefit as intended and contracted. It is immaterial whether the injured employees benefitted. The fact the third parties' settlement amount is lowered doesn't necessarily mean the employee is benefitted. The proof shows the intent of the parties is that the waiver applies to the appellant's subrogation

claim for workers' compensation benefits in this case. [*Lumbermens Mut. Cas. Co. v. Carter*, 934 S.W.2d 912, 914 (Tex. App.–Beaumont 1996, no writ)]. A reasonable construction of the language in the waiver that it ["]shall not operate directly or indirectly to benefit anyone not named in the schedule["] is that the parties did not intend to call for an impossible condition precedent, but that it intended a rational, reasonable and probable contract which a contractor and its workers' compensation carrier would naturally make to apply to a settlement as made in this case. *Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 115 (Tex. 1978).

*Lambert*, 59 S.W.3d at 259. In a separate issue, the *Lambert* Court also addressed whether the waiver of subrogation at issue permitted the injured employees to "double dip," and reasoned:

The fact that subrogation rights were waived was a consideration by both [the injured workers] and the [third-party] defendants in arriving at the settlement figure agreed upon. The settlement amount tends to be higher when there are subrogation rights to deal with, possibly making it impossible to settle. Usually, it is easier to settle a personal injury lawsuit, when there are no subrogation rights to consider. In order to make third-party suits easier to settle, the employer pays the compensation carrier a premium to waive its subrogation rights. The carrier further benefits by not having to litigate its subrogation rights.

*Lambert*, 59 S.W.3d at 257. *Lambert* was issued by our sister Court in Corpus Christi, and the Texas Supreme Court denied petition for review. We find *Lambert* to be well-reasoned and persuasive.

We are also guided by the opinion issued in *SM Energy*. 2012 WL 6100303, at *2.

Although Wausau is correct that the opinion in *SM Energy* is not binding on us, because the *SM Energy* Court relied on opinions issued by Texas courts applying Texas law vis-à-vis the waiver endorsement, we find its analysis instructive. *See SM Energy*, 2012 WL 6100303, at *4–9; *see Lambert*, 59 S.W.3d at 259; *Carter*, 934 S.W.2d at 913; *Pennzoil Co.*, 866 S.W.2d at 251.

In *SM Energy*, the United States District Court for the Southern District of Texas construed Sections 417.001 and 417.002 in relation to Liberty Insurance Corporation's "Waiver of our Right to Recover from Others" endorsement, which is strikingly similar to the waiver Wausau issued in this case. *SM Energy*, 2012 WL 6100303, at *2. The endorsement in *SM Energy* provided:

We have the right to recover our payments from anyone liable for an injury by this policy. We will not enforce our right against the person or organization named in the Schedule. (This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.)

This agreement shall not operate directly or indirectly to benefit anyone not named in the schedule.

*SM Energy*, 2012 WL 6100303, at *2 (record citations omitted). The Schedule in Liberty's endorsement differs only very slightly from the one before us, and provided: "Where required by contract or written agreement prior to loss." *SM Energy*, 2012 WL 6100303, at *2 (record citations omitted).

Select Energy employees, who were working as hired contractors for SM Energy, were injured while performing work in the course of their employment at an oil field, and one of the employees subsequently died. *SM Energy*, 2012 WL

6100303, at *1, 2. Suit was filed against Select in state court, and after SM Select notified the state court that it had reached a settlement with the plaintiffs, Liberty asserted "statutory subrogation rights" against the benefits paid and a credit against the future benefits of the surviving employee which stalled consummation of the settlement agreement. *SM Energy*, 2012 WL 6100303, at *1, 2. The plaintiffs countered that Liberty had waived its subrogation rights, and Liberty then filed a declaratory judgment suit against SM Energy and the employees' beneficiaries in federal court alleging the plaintiffs in the state court suit were required under Section 417.002 to reimburse Liberty out of their settlement proceeds received from the premises owner. *SM Energy*, 2012 WL 6100303, at *1, 3. Liberty sought a judgment that it had not contractually waived its right to reimbursement under the Act, and was entitled to reimbursement as well as future credits from the amount the claimants recovered in the state-court action. *SM Energy*, 2012 WL 6100303, at *1, 3.

SM Energy and one of the injured worker's beneficiaries sought summary judgment, arguing that the "Waiver of Our Right to Recover from Others Endorsement" had waived Liberty's statutory subrogation rights in favor of SM Energy, and the underlying master servant contract had required that Select obtain the waiver. *SM Energy*, 2012 WL 6100303, at *1, 3. Liberty countered in part that the waiver did not waive its right to recover from the injured employee or beneficiary receiving third-party settlement money. *SM Energy*, 2012 WL 6100303, at *1, 3, 7.

After examining the language of the policy, and relying on Texas case law, including *Lambert* and *Carter*, the Court recognized that courts have held a carrier's policy statement that it "would not 'enforce [its] right against the persons or organization named in the Schedule' include[d] a waiver of any right to seek reimbursement or setoff from payments to an injured employee as to any money paid by or on behalf of an organization listed in the Schedule." *SM Energy*, 2012 WL 6100303, at *4–7; *See, e.g., Lambert*, 59 S.W.3d at 259; *Carter*, 934 S.W.2d at 913.

The Court observed that the Act does not refer to a separate reimbursement right, and noted the Legislature's use of the term "reimbursement" in both Sections 417.001(b)(1) and 417.002(a). Tex. Lab. Code Ann. §§ 417.001(b)(1), 417.002(a)(West 2015); *SM Energy*, 2012 WL 6100303, at *7. The Court further recognized, "Courts applying Texas law do not distinguish between a carrier's subrogation and reimbursement rights in the Worker's Compensation Act context [and] ... regularly refer to both § 417.001(b) and § 417.002(a) in the context of 'subrogation' rights." *SM Energy*, 2012 WL 6100303, at *8; *see Ledbetter*, 251 S.W.3d at 37 ("a carrier is entitled to reimbursement" in a "carrier's subrogation claim"); *Approach Operating LLC v. Resolution Oversight Corp.*, No. 03-11-00688-CV, 2012 WL 2742304, at *1, *6 (Tex.App.–Austin July 3, 2012, no pet. h.)(applying Sections 417.001(b) and 417.002(a) in the context of a "subrogation" dispute); *Reliance Ins. Co. v. Hibdon*, 333 S.W.3d 364, 372–78 (Tex.App.–Houston [14th Dist.] 2011, pet. denied)(framing as a "subrogation rights" dispute a carrier's suit seeking reimbursement from an employee who had previously recovered in a separate third-party suit).

The *SM Energy* Court concluded that Liberty had contractually waived its statutory right to subrogate and recover workers' compensation benefits paid to the injured employee and beneficiaries, granted the defendants' motions for summary judg-

ment because no fact issue had been raised regarding waiver, and declared that Liberty's arguments and evidence had failed to "show that the waiver was limited to recovery from the third-party tortfeasor as opposed to the workers' compensation claimants" or allowed Liberty reimbursement for benefits paid or credits for future benefits to be paid. *SM Energy*, 2012 WL 6100303, at *9. In light of the summary judgment granted in favor of the defendants, the Court declared the beneficiary's motion for summary judgment moot. *SM Energy*, 2012 WL 6100303, at *9.

■■■ Having reviewed the evidence in the light most favorable to Wausau, crediting evidence favorable to it if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, we conclude the trial court's entry of judgment in favor of the Wedels and against Wausau is proper. *Fielding*, 289 S.W.3d at 848 (Tex. 2009), *City of Keller*, 168 S.W.3d at 827. The Wedels have shown that Wausau contractually waived its statutory right of subrogation and this waiver encompasses the right of reimbursement as well. By its arguments and evidence, Wausau has failed to raise a fact issue regarding its contractual waiver of its statutory right of subrogation. In light of Texas cases construing the Act and similarly-worded waiver-of-subrogation endorsements required by written contract, we are unable to conclude that Wausau is authorized to seek reimbursement or future credits from payments made to an injured employee or the injured employee's beneficiary. *See SM Energy*, 2012 WL 6100303, at *7, 9; *Lambert*, 59 S.W.3d at 259; *Carter*, 934 S.W.2d at 913. Issue One is overruled. Because we overrule Issue One, we need not address Issue Two regarding the parties' choice of law contentions.

## CONCLUSION

The trial court's judgment is affirmed.